[No. 3706.]

## ANDREW CRAWFORD v. M. R. ROBERTS.

JURISDICTION OF DISTRICT COURTS.—The district courts have jurisdiction of actions to recover from the owners the value of goods sold and delivered at the request of the master, for the use of a vessel engaged in navigating the high seas.

AUTHORITY OF THE MASTER OF A VESSEL.—The master of a vessel is presumed, even at a home port, to have authority to contract for such articles for

the use of the vessel as come under the general appellation of ship's stores, and the owner of the vessel is liable for the value of the same, unless he shows that the master had not such power.

SUPPLIES FOR A VESSEL.—If supplies for a vessel are purchased at a home port, by the captain, with the knowledge and consent of the ship's husband, the owners are *prima facie* liable for the same.

IDEM.—In such case the owners are liable, even if credit is given to the ship's husband, unless exclusive credit was given to him.

PROOF OF A FACT CONSTITUTING A DEFENSE.—The court should not instruct the jury, that if the defendant has introduced evidence tending to prove a fact which would constitute a defense, he is entitled to a verdict.

ERRONEOUS INSTRUCTION.—It is not error to refuse an instruction to a jury which assumes a fact to exist no proof of which was introduced.

REVIVAL OF A DEBT PAID BY A NOTE.—If several notes are given in payment of a debt, and only a part of the notes are paid, the original debt is revived as to the notes unpaid.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

This action was brought to recover the value of supplies alleged to have been furnished by the plaintiff to the bark Iconium. The bark was engaged in navigating the high seas, and San Francisco was her home port, and the defendant was a part owner, and the supplies were furnished at the home port. The above facts were alleged in the complaint; and it was also alleged that the captain was authorized by the owners to make the purchases, and that after each purchase a bill of the same was rendered to the ship's husband, who was also an owner, and was allowed by him, and charged by him to the vessel.

When the cause was called for trial the defendant moved to dismiss the action because the court had no jurisdiction, exclusive jurisdiction of such actions being vested in the Court of Admiralty. The motion was denied. The account against the bark extended from July 13, 1868, to April 6, 1869. On the trial, the plaintiff introduced evidence tending to prove that the ship was used in the lumber trade, between San Francisco and Washington Territory, and that the captain, at every trip while the account was running, ordered the goods from the plaintiff, who was a ship chandler and dealer in ship stores. That Glidden & Coleman were a firm in San Francisco, who were engaged in manu-

facturing lumber in Washington Territory, and used the Iconium and several other vessels, and Glidden was one of the owners of the bark. That the defendant did not order any of the goods or have anything to do with their purchase, and when goods were purchased a bill was rendered to the ship's husband. That Glidden & Coleman, on the 27th of March, 1869, gave the plaintiff three notes for the sum of two thousand one hundred and seventy-three dollars each, which were credited by the plaintiff to Glidden & Coleman as bills receivable.

That all the goods mentioned in plaintiff's complaint and in the bill of items thereto attached, were, at the dates in said bill mentioned, sold and delivered by plaintiff to the bark Iconium (at the request of the captain thereof); that the said goods were worth the sum charged therefor, in gold coin of the United States; that none of said goods had ever been paid for; that they were all articles of constant use and necessity on board sea-going vessels; that at the time of the execution of the notes, there was owing to plaintiff on their private accounts:

By Glidden & Coleman...................................$3188 49
By A. K. P. Glidden, on account of his new schooner
  Lola.................................................. 3935 19
By the schooner Cora................................... 677 40
  "    "      "    Helios.............................. 761 65
  "    "   bark Caroline Reid.......................... 726 60
  "    "      "  Huntsville............................ 638 77
  "    "      "  Scotland.............................. 811 70
  "    "      "  Iconium.............................. 713 85
  "    "      "  Grace Roberts........................ 236 88

That A. K. P. Glidden was the husband and managing owner of all said vessels, and that plaintiff was pushing him for money on all the foregoing accounts; that the notes in question were given by Glidden to plaintiff for the purpose of raising money on them; that there was no understanding or agreement as to the application by plaintiff of the payments if said notes should be paid by Glidden at maturity; that the notes were indorsed and negotiated by plaintiff; that Glidden took up one of them, and the payment was applied by plaintiff to the account of Glidden & Coleman

aforesaid; that the other two notes were not taken up by Glidden, but by plaintiff; that the account sued on was, at the times it was contracted, charged in the books of plaintiff against the bark Iconium, and not against Glidden, or Glidden & Coleman; that on the books of Glidden the said accounts and bills were credited to A. Crawford & Co., and charged against the bark Iconium; that defendant Roberts knew, while said account was accruing, that the captain of said bark Iconium was contracting said account against said bark Iconium; that as each separate bill of goods was by plaintiff sold and delivered as aforesaid, a bill thereof was forthwith sent by plaintiff to A. K. P. Glidden, husband of said bark Iconium, and by him credited to plaintiff and charged against said bark; that about one hundred and fifty dollars of the account sued on was made after the notes were given.

The defendant offered testimony tending to show that these stores, if purchased at all, were purchased and ordered by said Glidden, who was the ship's husband of said bark at the time alleged in said complaint, and that said plaintiff then and there gave exclusive and sole credit for said stores, provisions, etc., to Glidden & Coleman, and that the plaintiff took the promissory notes of Glidden & Coleman in full satisfaction and payment of the claim sued on. That the plaintiff and Glidden, before the commencement of the action, had a full settlement of the claim sued on, and Glidden and the bark were released from all liability. That the defendant did not order the supplies, and gave the captain no authority to buy them, and did not know that they were purchased on the credit of the bark. That Glidden & Coleman handled the bark in their lumber business, and used it on their own account. The court gave the jury the following instructions:

"First. That a plaintiff in a cause of this character has made out a *prima facie* case against a defending owner of a vessel when he proves that, upon the request of the captain, he furnished articles for the use of a vessel such as came under the general appellation of ship's stores and provisions, that the defendant was at the time an owner in the vessel,

that the alleged captain was in fact captain, and the value of the goods, although such goods and supplies are furnished at the home port of a vessel.

"Second. If the vessel had a managing owner, a ship's husband, and the captain purchases supplies at a home port of a vessel, with the knowledge and consent of the ship's husband, all the owners are *prima facie* liable."

The following are the second, fifth and sixth instructions referred to in the opinion which were asked by the defendant and refused by the court:

"Second. If the jury find that credit at the time the supplies were ordered was given to the ship's husband ordering them, this defendant is not liable for the goods furnished, and the verdict should be in his favor.

"Fifth. If the jury believe from the evidence that the plaintiff rendered an account for the articles named in the complaint to Glidden & Coleman, and afterwards took Glidden & Coleman's note for the same, and plaintiff also proved said account against Glidden or Glidden & Coleman, in bankruptcy, this would tend to prove that credit was given to Glidden or Glidden & Coleman, and in such case plaintiff cannot recover against defendant in this case.

"Sixth. When a party owing a debt or debts gives several notes in payment of a gross sum of money, owing by him, the original amount will only revive upon a failure to pay all the notes; the payment of one of the notes by the maker will prevent the original debt from reviving."

The plaintiff had a verdict of the jury, and judgment was rendered in his favor. The defendant appealed from the judgment, and from an order denying a new trial.

*Howe & Rosenbaum*, for the Appellant.

This is clearly a case in admiralty, and the District Court had no jurisdiction. (Conklin's Admiralty, 54; *Crawford* v. "*Caroline Reid*," 42 Cal. 469.) The ninth section of the Judiciary Act secures to suitors a common law remedy, where the common law is competent to give it. Had the plaintiff in this case declared in assumpsit for goods sold and delivered, and sustained the same by proof that the

defendant had bought said articles himself, or by an agent appointed by him, according to some rule known to the common law, this action in a common law court could be maintained.

The first instruction given by the court at the request of plaintiff is not law. The master of a vessel has no right to bind the vessel or owner in a home port, unless the owner is absent and cannot be communicated with. (Story on Agency, Sec. 119; 3 Kent's Com. 169; Abbott on Shipping, 140; *Stern* v. *Doe*, 12 Gray, 482.)

The ship's husband, being the general agent of the other owners, binds his principals, etc., but a creditor may waive their liability, and trust to him alone. (Parsons on Shipping and Admiralty, 112.)

*E. W. McGraw*, for the Respondent.

The District Court had jurisdiction. This is a suit in assumpsit—a common law remedy—and the court has jurisdiction to administer a common law remedy even when the contract is maritime. (*Bohannon* v. *Hammond*, 42 Cal. 227.)

The first instruction given is correct. The captain *prima facie* has authority in a home port to purchase necessaries for a vessel, and is *prima facie* agent of the owners for that purpose. The presumption of agency is a common law presumption, and has not been departed from by the common law courts. Appellant's counsel suppose that the relation between captain and owners is the offspring of the maritime law. They are mistaken. It is the offspring of the civil law, and transplanted therefrom into both common law and admiralty jurisprudence. (*The Rebecca*, Ware's Rep. 195; *Hussey* v. *Christie*, 5 East, 212; *Rich* v. *Cox*, Cowper's Rep. 636; *Abbott* v. *B. & R. S. P. Co.*, 1 Md. Ch. 546; *Provost* v. *Patchin*, 9 N. Y. 235; *Flanders* v. *Merritt*, 3 Barb. 201; *Winsor* v. *Maddock*, 64 Penn. St. 231; *Sampson* v. *Noble*, 14 La. Ann. 347.)

That in England a limitation of the power of the captain to bind the owner in a home port was at one time held to exist, is unquestionable, though most of the authorities cited by counsel are in our favor.

Appellant's second instruction was properly refused. The ship's husband was a part owner, and we gave credit to all the owners. If we had given exclusive credit to the ship's husband, with a full knowledge of the ownership of the defendant, then he might have been discharged. (1 Parsons on Maritime Law, 91.)

By the Court, McKINSTRY, J.:

The District Court had jurisdiction. The action is to recover the value of goods, wares and merchandise sold and delivered, and the plaintiff is pursuing his "common-law remedy."

The master's power is presumed, in the absence of evidence to the contrary, to extend to making contracts for supplies in the home port, which shall bind the owners. (*Provost* v. *Patchin*, 9 N. Y. 239, and cases there cited.) Whatever the doctrine of the maritime law, by the analogies of the common law, the duties and relations of the master furnish presumptive evidence of his authority to purchase supplies. The first instruction was not erroneous.

Nor was the second instruction given erroneous. It was simply to the effect that if the purchases were made by the captain with the knowledge and consent of the ship's husband, the owners were *prima facie* liable. The jury were not told that the owners were liable if it affirmatively appeared that the supplies were furnished on the exclusive credit of the ship's husband, or master, nor can such an inference be properly drawn from the language employed by the court below.

The second instruction asked by defendant was properly refused, as the hypothesis suggested by it is not that exclusive credit was given to the ship's husband; and again, there seems not to have been any evidence that the goods were "ordered" by the ship's husband.

The fifth instruction offered by defendant was to the effect, that if there was evidence tending to prove a fact alleged by defendant to constitute a defense, the verdict should be in his favor; or if otherwise construed it is obnoxious to the objection that it does not proceed on the idea of an ex-

clusive credit to the ship's husband. It was not error to refuse it.

The sixth instruction, as offered, does not appear to be sustained by reason or authority.

It was not error to refuse the seventh instruction as asked by defendant. It assumes that if the notes were accepted in payment, they were accepted in payment of the whole account sued on; while, as appears from the evidence, a portion of the articles mentioned in the account were furnished after the notes were given. If, therefore, the notes were received in payment for the goods previously sold, the defendant would not necessarily be entitled to a verdict.

Judgment and order affirmed.

Neither Mr. Chief Justice WALLACE nor Mr. Justice NILES expressed an opinion.