[No. 3445.  Decided May 17, 1900.]

GEORGE RANSBERRY, *Respondent,* v. NORTH AMERICAN TRANSPORTATION AND TRADING COMPANY, *Appellant.*

MARITIME CONTRACT—ACTION FOR BREACH—JURISDICTION OF STATE COURTS.

Although a contract of carriage may be a maritime one, an action for its breach against the person of the defendant is cognizable in the courts of this state, under § 9 of the federal judiciary act of 1789, which saves to suitors the right of a common law remedy, where the common law is competent to give it.

CARRIERS—BREACH OF CONTRACT TO CARRY PASSENGER—MEASURE OF DAMAGES.

In an action to recover damages for the breach of a contract of carriage, through the abandonment of the voyage before delivering plaintiff to the destination to which the carrier had agreed to transport him within a reasonable time, the proper measure of damages is such sum as would compensate plaintiff for any loss in money he had necessarily sustained in completing his journey, and for such loss of time as he may have sustained over and beyond the reasonable length of time for the carrier to take him to his destination; the rate of compensation for such time being that paid at the point of destination for the character of labor the plaintiff was adapted to and usually followed as a vocation; the jury taking into consideration for what length of time he could probably have procured employment and at what compensation, and deducting from the amount of wages allowed the probable amount necessary to pay his cost of living for the same period.

Appeal from Superior Court, King County. — Hon. E. D. BENSON, Judge. Affirmed.

*Bausman, Kelleher & Emory,* for appellant.

*Osborn & Steele,* for respondent.

The opinion of the court was delivered by

REAVIS, J.—Plaintiff (respondent) was a passenger on the steamship "Cleveland," owned by defendant and operated by it between the city of Seattle and St. Michael, Alaska. In August, 1897, defendant sold to plaintiff a ticket entitling him to passage from Seattle to Dawson City, in the Dominion of Canada. Defendant at the time of the sale represented that the steamer would make close connections with the steamboats owned and operated on the Yukon river by the defendant, and that, within a reasonable time thereafter, plaintiff would be safely carried to Dawson City. Defendant agreed to furnish plaintiff's transportation and subsistence, and carry for him baggage to the amount of one hundred and fifty pounds weight. In pursuance of the contract, plaintiff was carried to Fort Yukon, about four hundred miles below Dawson City, and there abandoned by defendant. Plaintiff thereafter traveled to Dawson City from Fort Yukon by dog sled, with team of dogs. Plaintiff alleged that he was compelled to make an expenditure of $900 for the necessary means and facilities in traveling between Fort Yukon and Dawson City, and also alleges that he lost ninety days of time, which was reasonably worth the sum of $12.50 per day. The whole damages for breach of the contract of carriage were laid at $1,975. The jury returned a verdict of $1,500. Defendant assigns three errors: First, refusal to give the following instruction: "I instruct you that there is no evidence here upon which you can allow plaintiff anything as damages for loss of time, and that

you are to allow him nothing in this respect;" and error in the instruction given by the court, upon which a right of recovery for loss of time was based; second, refusal to grant a new trial on the ground that the verdict was excessive; and, third, overruling the demurrer to the jurisdiction of the court to try the action.

1.   The demurrer to the jurisdiction is founded upon the claim that the contract of carriage was a maritime one, and therefore not cognizable in the state court.   The case of *The Moses Taylor v. Hammons,* 4 Wall. 411, is cited upon the demurrer; but in that case a seizure was made of the ship for breach of a contract of carriage under a California statute directing such seizure.   It was an action *in rem,* and it was there observed:

"A proceeding *in rem,* as used in the admiralty court, is not a remedy afforded by the common law; it is a proceeding under the civil law.   .   .   .   When used in the common law courts, it is given by statute."

The ninth section of the federal judiciary act of 1789 saves to suitors "the right of a common law remedy where the common law is competent to give it."   The case at bar is a common law action against the person of the defendant, and such actions have been frequently maintained. *Crawford v. Roberts,* 50 Cal. 235; *Tug Boat E. P. Dorr v. Waldron,* 62 Ill. 221 (14 Am. Rep. 86).

2.   The evidence is sufficient to sustain the verdict if the plaintiff was entitled to recover for loss of time.   The rule for damages in this class of cases insisted upon by counsel for appellant is that announced in *Hadley v. Baxendale,* 9 Exch. 341, as follows:

" Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of

things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it."

Accepting the rule as stated thus far, "where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered . . . arising naturally, i. e., according to the usual course of things, from such breach of contract," there is yet much difficulty left in the application to the varying facts of breaches of contract as they arise.   As said by the supreme court of Minnesota, in *Serwe v. Northern Pacific R. R. Co.,* 48 Minn. 78 (50 N. W. 1021):

"The important question, after all, is whether the injury was the direct and proximate, or only the remote, consequence of the wrongful expulsion."

That loss of time may be a usual and natural result of the breach of contract of carriage has been recognized by this court in *Turner v. Great Northern Ry. Co.,* 15 Wash. 213 (46 Pac. 243, 55 Am. St. Rep. 883), where it was determined that a failure to fulfill the contract of carriage of a passenger to a certain destination subjected the carrier to the expense thereby incurred, including the cost of conveyance by other means, and also that incident to the delay. It was there said of the plaintiff (a lawyer):

"Now, it is evident that, if the plaintiff was delayed in reaching his destination by the fault of the defendant, he was damaged, on account of lost time, to an amount exactly equal to that which he would have earned by the practice of his profession."

The trial court in that case instructed the jury that plaintiff was entitled to recover such sum as his time at

home for the period he was delayed by reason of defendant's failure to transport him was reasonably and fairly worth in his profession or business, and such instruction was approved here; and *Yonge v. Pacific Mail S. S. Co.,* 1 Cal. 353; 3 Sutherland, Damages (2d ed.), § 936;2 Sedgwick, Damages (8th ed.), § 863, were cited with reference to the evidence tending to establish damage for loss of time. The case of *Yonge v. Pacific Mail S. S. Co., supra,* was an action against a common carrier upon a contract to carry the plaintiff from New Orleans to San Francisco. There the trial court instructed the jury, "that, it being shown in evidence that the plaintiff was a good bookkeeper . . . the measure of damages would be the wages at the then rate in San Francisco of a good bookkeeper" during the period of detention on the way. The supreme court say of this instruction:

"An improper rule was prescribed by the district judge as the measure of damages. It may be, and probably was, proper to admit evidence that the plaintiff was a good bookkeeper, but it should have been left to the jury to weigh the probabilities of his procuring employment at San Francisco immediately upon his arrival, and of such employment being continued during the entire period covered by the charge of the court."

Substantial evidence in the case at bar tended to show that the wages of a common laborer at Dawson City were from one dollar to one dollar and a half by the hour; that such labor was in continuous demand; that the plaintiff had been a laborer nearly all his life, and was able to earn the common wages at Dawson. The evidence also tended to show that plaintiff lost about ninety days of time; that the labor of travel which plaintiff performed was equal to the hardship of labor at any mentioned work in Dawson. The superior court instructed the jury, upon the measure of damages, that the plaintiff was entitled to

recover such sum as would compensate him for any loss in money he had necessarily sustained in completing his journey from Fort Yukon to Dawson City, together with such other sum as would fairly compensate him for the time he necessarily lost in completing his journey. The court also instructed that the plaintiff was entitled to pay for such time as he necessarily lost, over and beyond the reasonable length of time for defendant to carry plaintiff to his destination at Dawson City; that the rate of compensation for such time was what an ordinary laboring man might or could have procured at Dawson City; and that the jury should determine from the testimony whether the plaintiff could have procured such employment, and, if so, for what length of time, and at what compensation. The jury was further instructed that it should take into consideration, in considering the question of wages, the amount which it would have cost the plaintiff to live during the period for which he was allowed for loss of time, and such cost of living should be deducted. It will thus be seen that the rule assumed in *Turner v. Great Northern Ry. Co., supra,* was followed by the superior court in its instructions. The appellant agreed to carry plaintiff to Dawson City in a reasonable time. It abandoned him at the commencement of winter, and left him to complete his journey as best he could. Certainly loss of time was a natural result of the breach of contract. It would also seem that the evidence of damage for such loss was competent, and from it the jury, in its sound discretion, could assess the amount.

Much of the argument in the brief of appellant could be properly addressed to the jury upon the evidence before it, but it is not applicable to the case here. We cannot say that the damages are so excessive as to require

remission, and, no error of law occurring, the judgment is affirmed.

GORDON, C. J., and DUNBAR and FULLERTON, JJ., concur.

ANDERS, J., not sitting.