[No. 4354.    Decided March 9, 1903.]

J. EMIL JOHNSON, *Respondent, v.* SAN JUAN FISH AND PACKING COMPANY, *Appellant.*

TRIAL — THEORY OF PARTIES AS TO CONSTRUCTION OF CONTRACT.

In an action for damages for breach of contract, which was tried by both parties on the theory that a written memorandum between them did not contain all of the contract governing one of the elements of damage, the defendant would not be entitled to have withdrawn from the jury the evidence relating to such item of damages, because of its not being within the provisions of the written memorandum.

SAME — WITHDRAWAL OF EVIDENCE FROM JURY — IMPROPER ATTACK ON OBSCURE PLEADING.

The fact that the allegations of a complaint are not so full and particular as they should be respecting any issue cannot be taken advantage of by motion to withdraw from the jury the evidence upon such issue, where the allegations are sufficient to advise defendant of the nature and amount of the demand against him.

BREACH OF CONTRACT—DAMAGES—EVIDENCE.

In an action for damages for breach of contract to return plaintiff to Seattle at the close of the Alaska salmon season, evidence of the average earnings of fishermen in the waters of Puget Sound during the time plaintiff was detained therefrom after the close of the Alaska season was admissible, when it appeared that fishing was the fixed occupation of plaintiff, that he was the owner of appliances which enabled him to engage in that occupation, and was reasonably certain of employment in the waters of Puget Sound at his particular occupation.

SAME.

In an action to recover damages for delay in transporting plaintiff, with his boat, fishing tackle and helper from Alaska to Seattle, a verdict allowing three dollars per day on account of the helper during the period of detention was erroneous, in the absence of evidence showing the reasonable value of such services to be worth that sum, the defendant not being bound by the contract rate of wages between plaintiff and his helper, nor by evidence of the value of such helper's services as a fisherman.

Appeal from Superior Court, King County.—Hon. ARTHUR E. GRIFFIN, Judge. Reversed.

*Bogle & Richardson* and *Thomas M. Vance,* for appellant.

*George Revelle* and *John Larrabee,* for respondent.

The opinion of the court was delivered by

FULLERTON, C. J.—In 1901 the appellant was the owner and operator of a salmon cannery, situated at Taku Harbor, in the Territory of Alaska. The respondent was a fisherman living in or about the city of Seattle, Washington, and was the owner of certain boats and fishing gear, suitable for fishing for salmon in the waters tributary to the appellant's cannery. About May 2, 1901, at Seattle, Washington, the parties entered into the following agreement:

"Memorandum of agreement between the San Juan Fish & Packing Company and J. E. Johnson.

"Parties of the first part, San Juan Fish & Packing Co., agree to pay parties of second part seven (7) cents for all sockeye and silver salmon caught during season of 1901, and 1½ cents per piece for as many hump back salmon as they may be able to use, and will pay for spring salmon the regular market price at the time of delivery.

"Parties of the first part agree to provide transportation for parties of the second part, and the parties of the second part agree to furnish necessary webbing and boats for one purse seine and to maintain same in repair at their own expense.

"Parties of the first part agree to allow a board allowance of $15.00 per month for crew of five to seven men. It is understood, however, that if parties of second part fail to keep the terms of this agreement, parties of the first part may withhold enough of the above amount of $15.00 board allowance to cover expenses of transportation of crew and gear, both going and coming."

Pursuant to the agreement, the appellant carried the respondent, with his fishing crew, boats, and gear, from Seattle to Taku Harbor, early in May, where the respondent engaged in fishing until September 1st following, delivering all the fish caught by him to the appellant's cannery at the prices named in the contract, and otherwise complying with the terms thereof. At the date last named he came in from the fishing grounds to the cannery, and stated to the appellant's manager that he desired to be returned to Seattle with his crew, boat, and gear, giving as his reason therefor that the fish had become so scarce it was no longer profitable to fish for them. On the next day —September 2—a steamer plying regularly between Seattle and Alaskan ports called at the cannery at Taku Harbor, being on its way to Seattle. The appellant's agent attempted to procure transporta-

tion for the respondent on this steamer, but was unable to get transportation at all, as he testifies, or at satisfactory terms, as respondent's witnesses testify, for the boat and gear, although he could secure transportation for the men, which he offered them, promising to send the boat and gear later. Three of the crew went on the steamer. The respondent declined to go unless he could take his boat, and stayed at the cannery, keeping with him one of his crew to assist in its care while he should be detained there. The next steamer called twenty-three days later, when transportation for the respondent, his assistant, boat, and gear were secured thereon by the appellant's agent. In this action the respondent sues for the following items:

1. For fish delivered under the contract. .$1,188.92
2. For board allowance .............. 240.00
3. For purchase price of boat and gear sold
        the appellant ................... 102.20
4. For damages sustained by his detention
        at Taku Harbor for 23 days after he
        had quit fishing ................ 262.00

        Total .................... $1,793.12
    He admits receiving from the appellant
        in money, stores, etc .............. 699.78

        Leaving a balance of ....... $1,093.34

In his prayer for judgment, however, he demanded $1,099.34. The answer of the appellant substantially admitted all of the above items save the last. On this issue was joined, both as to the amount of damage suffered and as to the appellant's liability therefor. The answer also set up a counterclaim by way of an affirmative defense, in which it was alleged that the respondent undertook to fish

16-31 WASH.

throughout the entire fishing season,—that he failed and refused to do so, and that the appellant was damaged thereby in the sum of $1,000. The verdict of the jury was for the amount demanded in the prayer of the complaint, namely, $1,099.34—six dollars in excess of the total of the several items set out in the complaint which made up the demand.

The first error assigned is on the ruling of the court refusing to sustain the appellant's motion to withdraw from the jury all the evidence relating to the claim for damages for the alleged delay in securing transportation for the respondent, his assistant, boat, and gear from Taku Harbor to Seattle. This motion was based upon two grounds: First, that the contract did not obligate the appellant to return the respondent to Seattle before the close of the fishing season, which event had not happened at the time the respondent demanded transportation; and, second, because the complaint did not, on this branch of the case, state facts sufficient to constitute a cause of action. The written memorandum it will be noticed, does not in terms provide a time when the respondent was entitled to be returned; but the writing does not, on the theory of either party, contain all of the contract. Evidence was introduced without objection on the part of the respondent tending to show that he refused to sign a contract obligating himself to stay until the close of the fishing season, and on the part of the appellant to the effect that such was the contract, and that it was understood that the respondent agreed to wait and return on the appellant's own steamer. The court submitted the questions to the determination of the jury, we think, rightly. When the parties themselves try their case upon a certain theory, they cannot afterwards complain that such theory is incorrect. The second

ground for the motion was equally untenable. While the allegations of the complaint were not as broad and full as they might have been, still they were sufficient under this form of objection. They advised the appellant of the amount claimed as damages and of the nature of the demand. If the appellant wished for a fuller or more particular statement, it should have attacked the complaint before joining issue of fact thereon.

It is next contended that the court erred in admitting evidence tending to show the average earnings of fishermen engaged in fishing in the waters of Puget Sound during the month of September, 1901. It was shown that the respondent was a fisherman, and that it was his purpose, when he returned from Alaska, to engage in fishing in Puget Sound during the remainder of the fishing season; and this testimony was offered as a basis for estimating the damages sustained by him because of the delay of twenty-three days at Taku Harbor. It said that this evidence is too remote and conjectural to form a basis for estimating damages for that delay, and the case of *North American T. & T. Co. v. Morrison*, 178 U. S. 262 (20 Sup. Ct. 869), is cited as sustaining the contention. In that case it was held that the defendant, a transportation company, could not be held for wages which the plaintiff suggested he might have earned had the defendant fulfilled its contract and carried him to his place of destination at the time agreed upon. In the opinion stress was laid on the fact that the plaintiff had never been at the place where the company contracted to carry him; that he had no previous engagement or business there, or any promise of employment; that it was not shown what his occupation was, or what occupation he expected to follow at the point of destination. "The plaintiff was traveling to a land of

promise, hoping to there procure some occupation, he knew not what, or to engage in some business, he knew not what. The result of such an adventure cannot be foretold, and the plaintiff's anticipations afford no safe ground on which to base a claim for damages." In the case before us the conditions were different. Here the respondent had a fixed occupation, was the owner of appliances which enabled him to engage in that occupation, and was going to a place where employment at his particular occupation was certain. The amount of wages he might earn was, of course, uncertain, but wages of fishermen similarly situated furnished a test by which to determine the amount, and evidence of that character was admissible. *Ransberry v. North American T. & T. Co.,* 22 Wash. 476 (61 Pac. 154).

It is next objected that the verdict is not sustained by the evidence, in that it is too large. As we have shown, the verdict is in excess of the amount that the respondent was entitled to recover, because in excess of the amount claimed. Were this the only fault, however, we would not reverse the case because of it, but would remand it, with directions that the excess be remitted. But the respondent was permitted to recover for the wages of his helper at the rate of three dollars per day while detained at Taku Harbor, on the showing that the helper was a fisherman, and could have earned that sum by fishing in the waters of Puget Sound. This was error requiring reversal. The respondent could, of course, make such contract with his helper as he pleased, or pay him for his services such sum as he pleased; but when he sought to recover from the appellant for such services as a part of his damages he could recover only such sum as the services were reasonably worth, not what he paid or agreed to pay

him nor what the helper might have earned else-
where, unless these amounts were the reasonable
value of such services. While there was evidence
tending to show that the services of a helper
were necessary in caring for the boat and gear
while detained at Taku Harbor, there is no evidence which
tends to show what such services were reasonably worth,
and the verdict is, therefore, under the evidence, too large
by the amount the jury may have allowed for the same.

Other errors assigned are disposed of by what has been
said in the discussion of those specially mentioned. The
judgment is reversed, and the cause remanded for a new
trial.

MOUNT, DUNBAR and ANDERS, JJ., concur.