SCHUEDE v. ZENITH S. S. CO.

(District Court, N. D. Ohio, E. D.   June 3, 1914.)

No. 8694.

1. ADMIRALTY (§ 1*)—JURISDICTION—NATURE AND SCOPE.
　　In view of article 3, § 2, of the Constitution, extending the power of the federal courts "to all cases of admiralty and maritime jurisdiction," which practically adopted the general law of admiralty as the law of this country, such general law in force when the Constitution was adopted, and not modified by act of Congress, has the same force and is to be treated with the same consideration as must be given to statutes on the subject, and rights given thereby cannot be modified by state enactment.
　　[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 1–17; Dec. Dig. § 1.*]

2. ADMIRALTY (§ 2*)—JURISDICTION—SAVING OF COMMON-LAW REMEDY.
　　Judicial Code (Act March 3, 1911, c. 231) § 24, subsec. 3, and section 256, subsec. 3, 36 Stat. 1091, 1160 (U. S. Comp. St. Supp. 1911, pp. 136, 234), which saves to suitors against the exclusive jurisdiction of admiralty "in all cases the right of a common-law remedy when the common law is competent to give it," does not give a suitor who has a right of action growing out of a maritime contract the right to go into a law court to find a new remedy; but he may employ a common-law forum, if one is found competent to work out the rights involved in his contract.
　　[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 18–28; Dec. Dig. § 2.*]

3. MASTER AND SERVANT (§ 250¼, New, vol. 15 Key-No. Series)—PERSONAL INJURIES—RIGHT OF ACTION—INJURIES TO SEAMAN—WHAT LAW GOVERNS.
　　The provisions of the law maritime as to the relation of a seaman to his employment are part of the substance and obligations thereof, which cannot be modified by state law; and in case of an injury to a seaman in the course of his employment the maritime law determines his rights in an action to recover therefor, to the exclusion of the law of the state where the injury occurred and the suit is brought, whether it is brought in a state or in a federal court.

At Law.   Action by George Schuede against the Zenith Steamship Company, removed from state court.   On motion to strike out parts of answer.   Denied.

Newcomb, Newcomb & Chapman and Frank M. Cobb, all of Cleveland, Ohio, and W. J. Mahon, of New York City, for plaintiff.
　　Goulder, Day, White & Garry, of Cleveland, Ohio, for defendant.

KILLITS, District Judge.   The plaintiff, at the time of the injury of which he complains, was a wheelsman upon the Saxona, a vessel then enrolled and licensed to navigate the Great Lakes, and owned by the defendant, a Minnesota corporation.   In the petition the plaintiff refers his injury to defective rigging and to an improvident order made while the vessel was moored to a dock in the river at Cleveland, in waters within the jurisdiction of maritime law.   The Genessee Chief, 12 How. 443, 13 L. Ed. 1058.

This action was begun at law in the state court, and was removed to this court because of diversity of citizenship.   The proposition before the court requires the same determination as if the case were

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

still in the state court. Defendant pleads that plaintiff's employment, in the course of which he was injured, was under a maritime contract, and that his rights of recovery in such an action as this are determinable by the incidents of such a contract. Averments of the answer in this behalf are made the subject of a motion to strike out, and thereby the question is raised whether in the trial of this action the defendant may demand the application of the maritime law respecting the rights, duties, and liabilities of master to seaman and the relation of fellow servant and the force to be given to the principle of contributory negligence, or whether the action is to be controlled by the Ohio Employers' Liability Act (section 6244 et seq., General Code). Involved in the questions of construction are the provisions of paragraphs 3, respectively, of sections 24 and 256 of the Judicial Code of the United States (Act March 3, 1911, section 711, R. S. U. S. [U. S. Comp. St. 1901, p. 577]), for a saving to suitors against the exclusive jurisdiction of admiralty "in all cases the right of a common-law remedy, when the common law is competent to give it."

It is clear that plaintiff could have proceeded in admiralty for an injury arising in the course of such employment either in rem or in personam, in which case his rights would be determinable only by the principles of the maritime law; and it seems, therefore, to be the contention of his counsel that, because of the language quoted above from the Judicial Code, he has the option of entering the state court and at law there work out his rights by the law of the forum, enjoying whatever advantages he believes the state law offers to one complaining of injuries received in his master's service. It must be conceded that the plaintiff's employment was under a maritime contract. Gabrielson v. Waydell, 135 N. Y. 1, 31 N. E. 969, 17 L. R. A. 228, 31 Am. St. Rep. 793; Cornell Steamboat Co. v. Fallon, 179 Fed. 293, 102 C. C. A. 345. Both the general admiralty law and its statutory modifications treat, and have always treated, those engaged as seamen with particular favor, and the law in admiralty defines with particularity the reciprocal duties and responsibilities of owner and crew, master and seaman. The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760.

[1] We agree with counsel for defendant that the principles of the general maritime law in force in the United States and not the subject of specific enactment by Congress are to be treated as if actually on the statute books. This must be construed to be the effect of section 2, article 3, of the Constitution, extending the power of the federal courts "to all cases of admiralty and maritime jurisdiction," thus practically adopting the general law of admiralty as the law of this country, and such general law in force when the Constitution was adopted and not modified by act of Congress has the same force and is to be treated with the same consideration which must be given to statutes upon the subject. Murray v. Chicago & Northwestern Railroad Co. (C. C.) 62 Fed. 24; The Lottawanna, 21 Wall. 558, 22 L. Ed. 654. A state may not pass any act which abridges or enlarges the responsibilities or duties of maritime law. Rights in

admiralty cannot be affected by state enactment. The Moses Taylor, 4 Wall. 411, 18 L. Ed. 337; The Hine v. Trevor, 4 Wall. 555, 18 L. Ed. 451; The Lottawanna, supra; Butler v. Boston Steamship Co., 130 U. S. 527, 9 Sup. Ct. 612, 32 L. Ed. 1017; Workman v. New York, 179 U. S. 552, 21 Sup. Ct. 212, 45 L. Ed. 314.

[2] But for the exception in the act of 1879 (section 711, R. S.), carried into the present Judicial Code, allowing suitors recourse to a competent common-law remedy, it would seem that the citations above, asserting the controlling force of, general and statutory maritime law, indicate the necessity to overrule the motion before the court. To advance that saving clause as a reason why the plaintiff may escape what he may assume to be the disadvantages incident to his maritime contract and seek the advantages of the state law in his suit in a state court upon such a contract is, in our judgment, to misapprehend what is meant in this provision by the word "remedy." It must be observed, as suggested by Justice Field, in The Moses Taylor, supra, quoted approvingly in The Glide, 167 U. S. 606, 617, 17 Sup. Ct. 930, 42 L. Ed. 296, that what is saved to a suitor "is not a remedy in the common-law courts, but a common-law remedy"; that is, as we paraphrase it, the suitor who has a right of action growing out of a maritime contract may not go into a law court to find a new remedy, but he may employ a common-law forum, if one is found competent to work out the rights involved in his contract.

[3] In the case before us, the maritime law is not so favorable to the plaintiff touching the range of defense to his action as would be the Ohio law; but those defenses which he seeks to avoid are incidents to and, as against him, liabilities of his contract. They help define his contract of employment, and hence, although employable against him in defense, are no part of the remedy, as that term is used in the saving clause of the Code. The clause "leaves open the common-law jurisdiction of the state courts over torts committed at sea" (The Hamilton, 207 U. S. 398–404, 28 Sup. Ct. 133, 52 L. Ed. 264), and, in our judgment, does nothing else. The extent of liability for such a tort to be enforced in a common-law jurisdiction is to be restrained by the law which created the relation in which it was committed. This is the position taken by the court in Gabrielson v. Waydell, supra. It is precisely the distinction drawn in cases dealing with conflicts between the lex loci contractus and the lex fori, well illustrated in the case of Heaton v. Eldridge, 56 Ohio St. 87, 46 N. E. 638, 36 L. R. A. 817, 60 Am. St. Rep. 737, enforcing the principle that:

"Contracts receive their sanction from the law of the place where they are executed and to be performed, and their interpretation is controlled by that law; but the remedy upon the contract will be administered according to the law of the place where the remedy is sought."

The Supreme Court of Ohio held that the statute of frauds may, in an action in this state, be pleaded against the enforcement of a contract made in Pennsylvania, where no such statute was in force against the contract, because the defense did not affect the obligations under the contract, but their enforcement only. In Davis v.

Morton, 5 Bush (Ky.) 160, 96 Am. Dec. 345, set-off against the maker was allowed against the remote indorsers of a note made in Tennessee, but sued on in Kentucky, because the Kentucky law of set-off, in the court's judgment, belonged rather to the remedy then to the substance. In Downer v. Chesebrough, 36 Conn. 39, 4 Am. Rep. 29, it was held that the lex fori controlled the remedy upon a contract, but the lex loci contractus governed its obligations.

As we look at it, the provisions of the law maritime as to the relation of a seaman to his employment are part of the substance and obligations thereof, which cannot be modified by state law, even through recourse to the saving clause of the Code. The question before the court has apparently never been specifically passed upon by a court of higher jurisdiction than ours, so far as we know; but, so far as the force of the expression of the Judicial Code granting this saving to suitors has been discussed at all by the Supreme Court of the United States, it has been consistent entirely with the position which we take, as is seen by citation above from The Hamilton and The Moses Taylor. An earlier case is that of Steamboat Co. v. Chase, 16 Wall. 532, 534, 21 L. Ed. 369, in which it was urged that the saving of a right to enter the state courts was not applicable to a case where the right of action which might have been enforced in admiralty was not created by a state statute enacted subsequent to the passage of the Judiciary Act. The court says:

"Questions of the kind (such as we have before us here) cannot arise in suits in rem to enforce maritime liens, as the common law is not competent to give such a remedy. and the jurisdiction of the admiralty courts in such cases is exclusive. Such a question can only arise in personal suits, where the remedy, in the two jurisdictions, *is without any substantial difference.* Examined carefully, it is evident that Congress intended by that provision to allow the party to seek redress in the admiralty if he saw fit to do so, but not to make it compulsory in any case where the common law is competent to give him a remedy. Properly construed, a party under that provision may proceed in rem in the admiralty if a maritime lien arises, or he may bring a suit in personam in the same jurisdiction or he may elect not to go into admiralty at all, and may resort to his common-law remedy in the state courts, or in the Circuit Courts of the United States if he can make proper parties to give the Circuit Court jurisdiction of his case."

In The Belfast, 7 Wall. 624, 644, 19 L. Ed. 266, Justice Clifford uses this language:

"Undoubtedly most common-law remedies in cases of contract and tort, as given in common-law courts, and suits in personam in the admiralty courts, *bear a strong resemblance to each other,* and it is not, perhaps, inaccurate to regard the two jurisdictions * * * *as concurrent.*"

Again, the same Justice, in Steamboat v. Chase, in the opinion from which we have just quoted, calling attention to the fact that "different systems of pleading and modes of proceeding and different rules of evidence prevail in the two jurisdictions," says that the "state Legislatures may regulate the practice, proceedings, and rules of evidence in their own courts," which, when the action is at law in a federal court, shall, as far as applicable, become rules of decision.

It seems impossible to resist the conclusion that these justices are conceding nothing more than the right of a suitor to enter a state

court at law to have there his demands heard and determined according to the practice, procedure, and rules of evidence in that jurisdiction, and for no other purpose, and that they do not construe the provision as giving the suitor, with that option, an enjoyment of a change in the character and measure of his demands, and of the responsibilities and defenses of his master, under the contract underlying the action, a change due to the fact that between admiralty and at law in the state jurisdiction there is a diversity of incidents attaching to employment. Otherwise, Justice Clifford could not have said, accurately, that the remedies in the two courts are "without any substantial difference," or that they have such a "strong resemblance to each other" that they may fairly be regarded "as concurrent," nor would Justice Field have distinguished between "a remedy in the common law" and "a common-law remedy."

In construing a statute, it is the duty of the court to avoid, if it is reasonably possible, that interpretation which works out inequality, inconvenience, or absurdity. A construction involving consistency, equality, and convenience of those affected, and consonance with the spirit of the law generally, is preferred of a statute, unless the language is plainly an obstacle thereto.

The plaintiff proceeds on the theory that the law of Ohio applies against the Minnesota corporation, and the Ohio jurisdiction attaches in the present case, because the accident happened in an Ohio tributary to the Lakes. There may be some doubt whether it is not the law of the Saxona's home port and the jurisdiction of Minnesota which control, if there is no federal law applying (Thompson Towing & Wrecking Association v. McGregor, 207 Fed. 209, 124 C. C. A. 479); but, assuming that plaintiff's contention is right, then two consequences follow his construction of the saving clauses in sections 24 and 256 of the Judicial Code, both provocative of inconvenience, inequality, inconsistency and almost absurdity:

First. The defendant, for torts on contract committed by it of precisely the same character, and upon servants of precisely the same class, would be subject to as many varieties of responsibility, and would be compelled to vary its defenses as the laws pertaining to the incidents of service differ in the several places of accident. There are eight state jurisdictions bordering upon the waters in which the Saxona plies, and it is conceivable that eight seamen of the same class each might meet in his employment with an injury substantially of the same class in a port of each of such jurisdictions, each claimant enjoying a common right of recovery under the maritime law or a different right under the local law.

Second. A seaman would enjoy the option of a uniform contractual right under the law maritime, or to vary under local laws the incidents of the contract as he proceeds from port to port and as he had occasion to invoke such rights. In Buffalo his contract would be one thing; in Cleveland, if the Ohio law differs from that of New York, it would have another phase; to change its color again in Detroit, Milwaukee, Duluth, Chicago, and Michigan City, if the laws of their several jurisdictions, respectively, offered peculiarities.

These conditions, with all their inconveniences and inequalities and unnecessary burdens, are not compelled by the language of the saving clause in question, and should be avoided in construing that provision.

It seems reasonable to urge an analogy between the law maritime respecting the incidents of a seaman's employment as of general and exclusive application when it comes to a determination of the employer's responsibility for an injury in line of duty, and the federal law relating to the liability of carriers by railroad to their employés (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]). Before the act was passed, an action by an injured employé was governed by the law of the jurisdiction in which the cause thereof arose. Congress had not legislated upon a subject within its power; hence the states were privileged to apply their own laws. Now the federal law fixing the limits and controlling the rights and liabilities of the parties must be applied to the exclusion of the local law, although a state forum may be entered for a remedy. Erie Railroad Co. v. Welsh, 89 Ohio St. ——, 105 N. E. 189.

In the case of a cause of action for an injury incurred in the course of a maritime employment, to avoid the manifest inconveniences and inequalities involved in plaintiff's interpretation of the saving clause in question, it is not only reasonable, but well within the language of the law, to require whichever court, state or federal, is entered to work out a remedy, to enforce the general and uniform law maritime under which the contract of employment was made.

We are not in conflict with the long line of cases cited and examined, dealing with deaths resulting from marine torts, and in which state laws are applied in proceedings in admiralty as well as in actions at law in state and federal courts. It is worthy of note that in all these cases, from one of the earliest (Steamboat Co. v. Chase, supra) to the latest (The Hamilton, supra, and Thompson, etc., v. McGregor, supra), the application of state laws is sustained, not because such laws can be utilized in all cases when a suitor prefers to enter a state court, but because, "where no remedy exists for an injury in the admiralty courts, the fact that such courts exist and exercise jurisdiction in other causes of action leaves the state courts as free to exercise jurisdiction in respect to an injury not cognizable in the admiralty as if the admiralty courts were unknown to the Constitution and had no existence in our jurisprudence" (Steamboat Co. v. Chase, supra). In admiralty no remedy exists for a death resulting from a marine tort. In Cornell Steamboat Co. v. Fallon, 179 Fed. 293, 102 C. C. A. 345, Circuit Court of Appeals, Second Circuit, a death case, action at law under the New York modification of Lord Campbell's Act, it was pointed out that decedent, a seaman injured in the service of his vessel, had he lived to sue either at law or in admiralty, would have had his rights determined by the law maritime affecting his contract of employment, whereas his administratrix was privileged to use the state law.

A careful reading of Murray v. Pacific Coast Steamship Co. (D. C.) 207 Fed. 688, District Court of the Western District of Washington,

discloses that, while the question now before this court there arose, it was not found necessary to decide it. Nor do we find Stoll v. Pacific Coast S. S. Co. (D. C.) 205 Fed. 169, decided by the same court, necessarily inconsistent with our position here.

Our conclusion is that the Ohio Employers' Liability Act, commonly known as the "Norris Act," is not applicable to a maritime contract of employment, and that the motion to strike out should be overruled.