[No. 13708.   Department One.   June 15, 1917.]

ALEX LARSON, *Respondent*, v. ALASKA STEAMSHIP COMPANY,
*Appellant*.[1]

MASTER AND SERVANT—SAFE APPLIANCES—PROXIMATE CAUSE—EVI-
DENCE—SUFFICIENCY.   The proximate cause of a seaman's fall down
a hatch was an unfastened chair pedestal, left standing when the
hatch was opened in such a position that one of experience in the
exercise of ordinary care might take hold of it, where it was custo-
mary for seamen to take hold of the pedestals in securing a foot-
hold on the hatch ladder, and plaintiff did so and was precipitated
down the hatch when the unfastened pedestal gave way.

SAME—FELLOW SERVANTS—VICE PRINCIPAL—BOATSWAIN.   The fel-
low servant rule has no application in a case where a seaman was
precipitated down a hatch when he grasped an unfastened pedestal
which was negligently left standing, on opening the hatch, in such
a position that one of experience in the exercise of ordinary care
might use it for support, where the work was under the personal di-
rection of the boatswain, exercising all the authority of a master or
mate, since he was a vice principal.

SAME—SAFE APPLIANCE—QUESTION FOR JURY.   Whether a fixed
pedestal near a hatch opening was a safe appliance for seamen to

[1]Reported in 165 Pac. 880.

use for support in securing a foothold upon the hatch ladder, is a question for the jury, where witnesses testified that there should have been a ring bolt or rope around the pedestal to relieve the reach between the pedestal and the ladder.

ADMIRALTY—JURISDICTION OF STATE COURTS—PERSONAL INJURY TO SEAMEN—STATUTES—COMMON LAW REMEDY. Under 36 Stat. L. 1091, providing that Federal district courts shall have original jurisdiction of all civil causes of admiralty and maritime jurisdiction, "saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it," the state courts have jurisdiction over actions *in personam* for injuries due to the personal negligence or default of the owners, such as unseaworthiness of the vessel or tackle; hence in an action for injuries due to unsafe appliances for a seaman's descent down a hatch, the "common-law remedy" is not restricted to enforcement of the maritime contract of service, which makes the ship and owners liable to seamen only for wages and expenses of maintenance and cure to the end of the voyage or service, but allows recovery of full indemnity under the common law rules.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict will not be set aside for excessiveness where it is not so far out of proportion to the injuries received as to bear inherent evidence of passion or prejudice.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered April 12, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a seaman through falling down the hatchway of a ship. Affirmed.

*Bogle, Graves, Merritt & Bogle,* for appellant.

*Walter S. Fulton,* for respondent.

CHADWICK, J.—Alex Larson brought this action to recover damages for personal injuries sustained while working as a seaman on the steamship Victoria. The ship was anchored off shore in Alaska on the 14th day of June, 1915. Larson was ordered by the boatswain to go down into the hold preparatory to working cargo. Number 4 lower hold is covered by a hatch which is twelve by fourteen feet. When in place it makes a part of the dining saloon floor. It has no coaming and, as described by one of the witnesses, is "as smooth as a

table." A dining room table and a row of chairs on iron pedestals are built directly over, and screwed to the doors of, the hatch. When the hatch is opened, the chairs and table are removed, and the doors are folded back on either side by means of a line from a winch. The hold is about twenty-five feet deep. It is reached by means of a perpendicular ladder placed some seven or eight inches back of and under the hatch opening.

Directly forward of the hatch opening is another table and a row of chairs. The pedestals supporting the chairs for this second table are screwed into the deck or the floor of the dining saloon about two or three feet from the edge of No. 4 hatch. It was the custom of the seamen to hold onto one of the forward stationary pedestals while securing a foothold and handhold on the ladder when descending into the hold of the ship. The testimony shows that, when the pedestals supporting the chairs over the hatch doors were removed, one of them was left standing loose near the fixed pedestals of the forward table. When respondent started to descend the ladder, he took hold of the unfastened pedestal with his right hand and a fastened pedestal with his left hand. To secure a hold with his hand on the ladder, he released his left hand, thus throwing his weight on the unfastened pedestal, which, giving way, caused him to fall into the hold below. The jury found that Larson had received permanent injuries, and returned damages in the sum of $2,600. The facts will be further noticed in the course of the opinion.

From a judgment upon the verdict, defendant has appealed. Respondent predicates his right to recover upon appellant's alleged failure to furnish respondent with a safe place to work, and the lack of proper appliances to enable him to safely carry out the boatswain's order to go down into the hold, as well as its negligence in placing the loose pedestal in front of the hatch ladder. The manner of descending into the hold may be more particularly described. One doing so must lie flat on the floor with his feet and legs

over the opening. The ladder cannot be safely reached with the feet without some secure hold for the hands, or for one hand after a foothold has been secured. One hand must be released and reached under the edge of the hatch and gripped upon the uppermost rung of the ladder, when the act of descending can be finished without inconvenience or danger.

While the act of descending is, under any circumstances, attended with some danger, and puts a seaman to the exercise of great care for his own safety, and while it may be, as the testimony tends to show most strongly, that toggles, a ring bolt, or a rope to be thrown around the stationary pedestal should have been provided, we think it unnecessary to follow counsel in their rather elaborate discussion of this phase of the case, for whatever may have been necessary under ordinary conditions, we have here to deal with an extraordinary condition. That is, the placing of a loose pedestal at a place where one of experience, in the proper course of his employment, might throw his weight upon it to his own hurt or injury. Indeed, the experienced man, the one most accustomed to do the thing required, would be the one most apt to reach for the pedestal without conscious thought of the possible insecurity of the thing.

Passing then to the ultimate fact, we have no hesitation in saying that the jury was justified in finding that the proximate cause of the injury was the placing of the loose pedestal at a place where a man in the exercise of ordinary care for his own safety, might take hold of it.

It is not charged that respondent put the pedestal where it was, and surely there is no principle that would hold him to the rule of contributory negligence for acting upon appearances and without a particular examination as to the security of the pedestals immediately in front of the place where he was compelled to descend. But if respondent is not to be exculpated from the charge of contributory negligence, as a matter of law, the facts are clearly sufficient to

carry the case to a jury, and appellant is concluded by the verdict.

Appellant's first hope must necessarily lie in the contention that the loose pedestal was placed in a position to invite disaster by a fellow servant; that the negligence, if any, was that of a fellow servant and not of appellant and hence no recovery can be had. We think the doctrine of fellow servant cannot apply for two reasons, equally obvious.

The clearing of the hatch for removing cargo from the hold was done under the immediate direction of the boatswain, who was in the exercise of all the authority possessed by the master or mate. He was a vice principal. The duty of care for the safety of the workmen was upon the ship. The work being under the personal direction of one of higher authority than any of the seamen, the principal was bound to answer for the negligence of men as well as the insecurity of methods or means. For it would be the ultimate of illogic to hold that a principal could be held when directing, or for failure to direct, and could not be held for a thing when done under his direction. The principal must act through an instrumentality of his own choosing, which is but another way of saying that it is the duty of the principal to furnish a reasonably safe place to work in, and to keep that place reasonably safe during the progress of the work. Such duty is not performed by offering a safe place to work, but extends to "all the instrumentalities, machinery, and appliances which, from the nature of the work, directly affected the safety of the place." *Westerlund v. Rothschild,* 53 Wash. 626, 102 Pac. 765.

That the boatswain, supervising the work and executing the will of the master of the ship, was a vice principal, we have no doubt. Respondent being hurt while following the directions of the boatswain, the question of contributory negligence and assumption of risk were for the jury.

The second reason which finds response in our minds, although we do not bottom our decision upon it for reasons

hereinbefore assigned, is that, before the question of fellow servant can be considered by the court, we must find, as a matter of law, that the fixed pedestal was itself a safe appliance, and that the accident would not have happened if the loose pedestal had not been left where it was.

Whether the fixed pedestal was a safe appliance was clearly a question for the jury. Many witnesses testified that there should have been a ring bolt or toggles or a rope to aid the seamen. One of appellant's own witnesses says that there should have been a rope to throw around the fixed pedestal to relieve the reach between the pedestal and the ladder below.

Appellant finally contends that respondent cannot recover because the obligations of the parties are governed by the maritime law; that, under the maritime law, all members of the crew, with the possible exception of the master, are fellow servants; that the liability of the master or owner exists whether the accident is attributable to negligence or accident, but the remedy in all cases is limited to a recovery for maintenance and cure. *The Osceola*, 189 U. S. 158.

The right to maintain an action in the state courts depends upon a proper construction of § 9 of the Federal Judiciary Act, 1 Stat. L. 77, Rev. Stat., § 563, reenacted March 3, 1911, § 24, 36 Stat. L. 1091.

"The district courts shall have original jurisdiction as follows:  . . .
"Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common-law is competent to give it."

If we understand counsel aright, it is contended that there is no such thing as a common law action under the maritime law; that there is a definite distinction between a common law action or right of action at common law, and a common law remedy; that it is not a remedy in the common law which is saved, but "a common law remedy"; that the right to recover for maintenance and cure irrespective of negligence was in no case allowable at common law, and that, therefore, the

remedy lies in the statute, and so resting, a right at common law cannot be asserted, for "surely a vessel and its owners are not to be subjected to all the liabilities of both the common law and the admiralty law, in an action brought in a common law court, without being entitled to the corresponding benefits (as far as its defenses are concerned) of such laws. Either the admiralty law in its entirety is enforceable in such courts or it is not enforceable to any extent." Appellant cites: *The Moses Taylor*, 4 Wall. 411; *The Glide*, 167 U. S. 606; *The Belfast*, 7 Wall. 624; *Ashbrook v. The Golden Gate*, Fed. Cas. No. 574; *The Isabella*, Fed. Cas. No. 7100; *Knapp, Stout & Co. v. McCaffrey*, 177 U. S. 638; *Schuede v. Zenith S. S. Co.*, 216 Fed. 566.

In *Schuede v. Zenith S. S. Co., supra*, which is asserted to be a case directly in point, it is said:

"But for the exception in the act of 1879 (section 711, R. S.) carried into the present Judicial Code, allowing suitors recourse to a competent common-law remedy, it would seem that the citations above, asserting the controlling force of general and statutory maritime law, indicate the necessity to overrule the motion before the court. To advance that saving clause as a reason why the plaintiff may escape what he may assume to be the disadvantages incident to his maritime contract and seek the advantages of the state law in his suit in a state court upon such a contract is, in our judgment, to misapprehend what is meant in this provision by the word 'remedy.' It must be observed, as suggested by Justice Field, in *The Moses Taylor, supra*, quoted approvingly in *The Glide*, 167 U. S. 606, 617, 17 Sup. Ct. 930, 42 L. Ed. 296, that what is saved to a suitor 'is not a remedy in the common-law courts, but a common-law remedy'; that is, as we paraphrase it, the suitor who has a right of action growing out of a maritime contract may not go into a law court to find a new remedy, but he may employ a common-law forum, if one is found competent to work out the rights involved in his contract.

"In the case before us, the maritime law is not so favorable to the plaintiff touching the range of defense to his action as would be the Ohio law; but those defenses which he seeks

to avoid are incidents to and, as against him, liabilities of his contract. They help define his contract of employment, and hence, although employable against him in defense, are no part of the remedy, as that term is used in the saving clause of the Code. The clause 'leaves open the common-law jurisdiction of the state courts over torts committed at sea' (*The Hamilton*, 207 U. S. 398-404, 28 Sup. Ct. 133, 52 L. Ed. 264), and, in our judgment, does nothing else. The extent of liability for such a tort to be enforced in a common-law jurisdiction is to be restrained by the law which created the relation in which it was committed. . . .

"In the case of a cause of action for an injury incurred in the course of a maritime employment, to avoid the manifest inconveniences and inequalities involved in plaintiff's interpretation of the saving clause in question, it is not only reasonable, but well within the language of the law, to require whichever court, state or federal, is entered to work out a remedy, to enforce the general and uniform law maritime under which the contract of employment was made."

In *Cornell Steamboat Co. v. Fallon*, 179 Fed. 293, 294, it was held:

"The contract between the defendant and the deceased is a maritime contract, and establishes their relation as well in courts of law as in courts of admiralty. A seaman injured in the service of the vessel has a right to recover against the vessel and her owners for his wages and the expenses of his maintenance and cure to the end of the voyage, or as long as he has a right to wages, whether he is or they are guilty of negligence or not. And this is the extent of his right to recover. There is an exception, apparently a departure from the maritime law, but established by so many decisions that the Supreme Court has declined to disturb it, viz., that if the seaman's injury is due to the personal negligence or default of the shipowners, as, for instance, to the unseaworthiness of the vessel or her tackle, or failure to supply proper medical treatment and attendance, he may recover full indemnity. *The Iroquois*, 194 U. S. 240, 24 Sup. Ct. 640, 48 L. Ed. 955; *The Osceola, supra; The Troop*, 128 Fed. 856, 63 C. C. A. 584. As no personal negligence or default is imputed to the defendant, the decedent would not have had a right to full indemnity if he had lived, but only to his wages and the expense of his maintenance and cure."

It is asserted that this court has inferentially held that the remedy afforded by the maritime law is exclusive. *Sanders v. Stimson Mill Co.*, 32 Wash. 627, 73 Pac. 688. On the other hand, respondent contends that this case falls within the exception noted in the case cited in the *Cornell Steamboat Co.* case. That is, any defect in the ship, its tackle, or appliances for working its cargo is enough to render the ship unseaworthy within the meaning of that term as employed in the case of *The Osceola, supra*, and to permit a recovery of full indemnity to the extent of the injury. That such a defect brings the case within the rule of unseaworthiness is held in the case of *The Argo*, 210 Fed. 872, where a recovery was allowed for failure to guard machinery.

That confusion should follow the Federal statute is evident from its terms. To avoid what would often operate as a denial of justice, the courts, without confessing the motive, as it seems to us, have injected a saving clause in the term "unseaworthiness." *The Osceola, supra.*

The Federal act "saving to suitors in all cases the right of a common law remedy where the common law is competent to give it . . ." "leaves open," as it said by Justice Holmes in the case of *The Hamilton*, 207 U. S. 398, "the common law jurisdiction of the state courts over torts committed at sea. This, we believe, always has been admitted." The question was, Congress having remained silent, whether a state could legislate so as to extend the jurisdiction of its courts over questions maritime. The court reasoned, inasmuch as the state courts had power to follow their own notions about the law in such cases, that the power of a state to speak through its other mouthpiece, the legislature, could not be denied, and while it may be, as is said in the *Schuede* case, that the case of *The Hamilton* does not, in its terms, go beyond a holding that the Federal statute extends jurisdiction to the state courts over torts committed at sea, yet,

in its spirit and its logic, it must be taken at a greater worth, for the power to exercise a common law jurisdiction, without the right to give such remedy as the common law would afford if the case were between ordinary litigants, would be to grant a right and deny the very remedy named in the act; that is, a common law remedy.

To hold with the *Schuede* case, that a grant of jurisdiction to the state courts means no more than a power to give the same remedies as are allowable under the maritime law, would be to deny the primer definition of jurisdiction, that is, the power to hear and determine. To determine must, of necessity, mean the power to enter a judgment consistent with the common law, if the court hearing the case has common law jurisdiction and the case falls within the exception noted.

The right to maintain an action *in personam* even to the extent of aider by attachment is recognized in *Rounds v. Cloverport Foundry & Machine Co.*, 237 U. S. 303. There the question whether a contract for repairs was a maritime contract a breach of which could be determined only in the Federal courts was squarely put. The court considered the same saving statute which is now relied on. It was held that the exclusive jurisdiction of the Federal courts extended to cases *in rem*, and that no controversy might arise as to the meaning of the term *in rem* as it is used in our discussions of the maritime law it was defined:

"The proceeding *in rem* which is within the exclusive jurisdiction of admiralty is one essentially against the vessel itself as the debtor or offending thing,—in which the vessel is itself 'seized and impleaded as the defendant, and is judged and sentenced accordingly.' "

And further, in discussing the question of concurrent jurisdiction:

"As this court said in *Johnson v. Chicago &c. Elevator Co.*, *supra* [119 U. S. 388], in reviewing *Leon v. Galceran, supra* [11 Wall. 185], it was held that 'the action *in personam* in

the state court was a proper one, because it was a common law remedy, which the common law was competent to give, although the state law gave a lien on the vessel in the case, similar to a lien under the maritime law, and it was made enforceable by a writ of sequestration in advance, to hold the vessel as a security to respond to a judgment, if recovered against her owner, as a defendant; that the suit was not a proceeding *in rem,* nor· was the writ of sequestration; that the bond given on the release of the vessel became the substitute for her; that the common-law is as competent as the admiralty to give a remedy in all cases where the suit is *in personam* against the owner of the property; and that these views were not inconsistent with any expressed in *The Moses Taylor* [4 Wall. 411], in *The Hine v. Trevor* [4 Wall. 555], or in *The Belfast* [7 Wall. 724].' ''

As thus understood, we find nothing in the Federal cases inconsistent with a former decision of this court, *Ransberry v. North American Transp. & Trad. Co.,* 22 Wash. 476, 61 Pac. 154. *Sanders v. Stimson Mill Co., supra,* in no way trenches upon the doctrine of this case. There a recovery was properly limited for the injury was the result of an accident. There was no testimony showing, or tending to show, a breach of duty or of obligation on the part of the owner or the unseaworthiness of his ship.

Our conclusion is that an action *in personam* may be maintained for a tort committed on the high seas if the accident is attributable to the "unseaworthiness" of the vessel; that the common law courts of a state have jurisdiction concurrent with the Federal courts when proceeding *in personam,* and that the state court will grant the relief that a common law court would have granted had the case been originally triable in such court.

Objection is made that the accident having occurred on the high seas and not within the territorial jurisdiction of the courts of Washington, respondent must seek his remedy in the Federal courts, or take his remedy in the state court under the maritime law. It may be that the *Schuede* case so

holds. Counsel insists that it does. But we prefer to hold what we conceive to be the better rule. Having held that the action is one *in personam*, it follows that it is transitory, and appellant is subject to suit in any court having jurisdiction of the person. Jurisdiction over the person is not questioned in this case. Moreover, if actions arising out of the unseaworthiness of a ship are not within the Federal statute, it follows that a want of jurisdiction cannot be urged when the action is brought in the state courts.

Objection is made to one of the instructions, but with this view of the law we think it was not prejudicial.

While the recovery in this case is substantial, and is probably more than any one of us would have been willing to return if we were sitting as jurors, we think it is not so far out of proportion to the injuries received by the respondent as to bear inherent evidence of the passion and prejudice of the jury.

The judgment is affirmed.

ELLIS, C. J., MORRIS, MAIN, and WEBSTER, JJ., concur.