[No. 32715. Department Two. August 24, 1954.]

DELBERT L. WILLIAMS, *Appellant*, v. STEAMSHIP MUTUAL
UNDERWRITING ASSOCIATION, LIMITED, *Respondent*.[1]

[1]Reported in 273 P. (2d) 803.

*Bassett, Geisness & Vance*, and *Stephen V. Carey*, for appellant.

*Wayne J. Davies*, for respondent.

HILL, J.—While the M. V. "Southeastern" was owned and operated by the Briggs Steamship Corporation (hereinafter called "Briggs"), a Delaware corporation doing business and operating in this state, the appellant, a seaman thereon, was injured by a fall into a manhole in a passageway, the cover having been removed by engineering personnel to gain access to the refrigeration machinery. At the time of the injury, Briggs was covered by a policy of marine insurance issued by the respondent in California. The exact character of this insurance will be discussed hereinafter.

Appellant instituted an action against Briggs in the superior court for King county but was unable to obtain service for the reason that Briggs had ceased its operations in this state. Appellant later commenced an action against Briggs as a dissolved corporation (permissible under 4 Del. Code Ann. 362, Title 8, § 278) on the civil side of the United States district court for the district of Delaware, and a default judgment was entered subject to proof of appellant's damages. Upon the taking of depositions of appellant and his physician regarding the nature of the injuries sustained, judgment was entered in favor of appellant for the amount prayed for, twenty-five thousand dollars, no part of which has been paid. This will be referred to hereinafter as the "Delaware judgment."

Appellant filed a certified copy of that judgment in the United States district court for the western district of Washington and brought this action to enforce it, based upon a California statute providing for suit against an insurer by a judgment creditor of the insured. Respondent made two major contentions in the trial court: (1) that the Delaware judgment was void because the court had no jurisdiction of the subject matter of the action, and (2) that the insurance policy it had issued was an indemnity and not a liability policy, and the California statute which in effect made it a liability policy was neither applicable nor constitutional.

After four days of trial, judgment was entered dismissing the complaint and enjoining appellant from attempting to enforce the Delaware judgment, the basis being that it was

void for lack of jurisdiction over the defendant Briggs and over the subject matter of that action. This appeal followed.

 Inasmuch as there is some intimation that the issues raised as to the validity of the Delaware judgment constituted a direct attack upon that judgment, we wish to make it clear at the outset that an attack upon a judgment in defense of an action to enforce it is a collateral attack. *In re Fourth Ave.,* 18 Wn. (2d) 167, 138 P. (2d) 667 (1943); 1 Freeman on Judgments (5th ed.) 623, § 310. Where a suit is on a foreign judgment, the requirements of full faith and credit correspond to the rules governing collateral attacks on domestic judgments, *i.e.,* a judgment valid where rendered is conclusive as to the merits of the cause of action merged therein. *Crowley v. Baumgartner,* 114 Wash. 193, 194 Pac. 970 (1921); *Deposit Bank v. Frankfort,* 191 U. S. 499, 48 L. Ed. 276, 24 S. Ct. 154 (1903); *Milliken v. Meyer,* 311 U. S. 457, 85 L. Ed. 278, 61 S. Ct. 339, 132 A. L. R. 1357 (1940); 50 C. J. S. 492, Judgments, § 891. Judgments of Federal courts must be accorded the same full faith and credit as judgments of the courts of the state where rendered. *Hancock Nat. Bank v. Farnum,* 176 U. S. 640, 44 L. Ed. 619, 20 S. Ct. 506 (1900); *Knights of Pythias v. Meyer,* 265 U. S. 30, 68 L. Ed. 885, 44 S. Ct. 432 (1924).

 It is conceded that the validity of a foreign judgment may always be attacked upon the grounds that the court rendering it lacked jurisdiction of the parties or of the subject matter of the action (*Milliken v. Meyer, supra*), and these are the grounds upon which the trial court based its judgment of dismissal in the present case. However, the burden of establishing lack of jurisdiction is on the party attacking the judgment, it being well settled that in an action on a judgment of a court of general jurisdiction in a sister state (or a Federal court), jurisdiction over the cause and the parties is to be presumed unless disproved by extrinsic evidence or by the record itself. *Ritchie v. Carpenter,* 2 Wash. 512, 28 Pac. 380 (1891); *Trowbridge v. Spinning,* 23 Wash. 48, 62 Pac. 125 (1900); *Milliken v. Meyer, supra; Adam v. Saenger,* 303 U. S. 59, 82 L. Ed. 649, 58 S. Ct.

454 (1938). (This rule is subject to certain limitations hereinafter discussed but presently of no importance.)

The complaint in the Delaware action, commenced August 31, 1950, contained the following material allegations:

"On or about September 1, 1947, the plaintiff [appellant here] was proceeding along the passageway to his quarters in the forecastle. At that time a manhole cover in the floor of the passageway, about two and one-half feet square, had been removed for the apparent purpose of allowing engineering personnel into the refrigerating machinery. The officers or other employees of the defendant [Briggs] had negligently and carelessly failed to erect any guards or signs to warn of this condition and had negligently and carelessly failed to provide sufficient and adequate light in the passageway. As a proximate result of the aforesaid conditions and the negligence and carelessness of the defendant, the plaintiff fell into said hatchway."

In the present action, the trial court found, on the basis of the evidence submitted, that the injury occurred August 24, 1947. The trial court also found that the Delaware action was brought under the Jones act (46 U. S. C. A. § 688) and concluded that, inasmuch as it had not been brought within the three-year period required by that act, the Delaware court did not have jurisdiction of the subject matter of the action.

If it be conceded that failure to bring the action within three years of the date of injury deprived the Delaware court of jurisdiction of the subject matter under the Jones act, and that extrinsic evidence as to the date of the injury could be introduced in the present case to establish that the injury had occurred more than three years prior to the commencement of the Delaware action, we are still of the opinion that the trial court's basic premise, i.e., that the presence or absence of jurisdiction under the Jones act was determinative of the Delaware court's jurisdiction of that action, was erroneous.

In order successfully to attack the Delaware judgment, respondent had not only to show that the Delaware court had no jurisdiction under the Jones act but that, in the absence of that act, it had no jurisdiction of the subject

matter of the action. It therefore becomes necessary to inquire whether, under the allegations of the pleadings in the Delaware action, there is any other basis on which the United States district court for Delaware had jurisdiction to entertain an action at law for a tortious injury suffered in the course of maritime employment.

As a basis for this inquiry, we must look to the Jones act and to the maritime law which it modified. The leading case, *The Osceola,* 189 U. S. 158, 47 L. Ed. 760, 23 S. Ct. 483 (1903), limited the seaman's right to compensatory damages under the maritime law (apart from maintenance and cure) to actions for injuries caused by the unseaworthiness of the vessel or the failure to supply and keep in order the proper appliances appurtenant to the ship. The Jones act provides that:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply."

Mr. Justice Van Devanter has said of the Jones act that, "rightly understood," it

". . . neither withdraws injuries to seamen from the reach and operation of the maritime law, nor enables the seaman to do so. On the contrary, it brings into that law new rules drawn from another system and extends to injured seamen a right to invoke, at their election, either the relief accorded by the old rules or that provided by the new rules. The election is between alternatives accorded by the maritime law as modified, and not between that law and some nonmaritime system." *Panama R. Co. v. Johnson,* 264 U. S. 375, 388, 68 L. Ed. 748, 44 S. Ct. 391 (1924).

For our present purposes, it need only be said that the effect of the Jones act was to extend the seaman's right to compensatory damages for personal injuries which occurred on board ship to injuries for which the negligence of the ship's officers or members of the crew was responsible. As is frequently pointed out, a seaman could not,

prior to the passage of that act, successfully prosecute an action predicated solely upon negligence, because he would always be confronted with the defense of common employment (the fellow-servant rule).

In 1 Benedict on Admiralty (6th ed.) 50, § 25, in a discussion of the effect of the Jones act, it is said:

"The defense of common employment (the fellow servant rule) is abolished, and the doctrine of assumption of risk is profoundly modified. If a statute relating to safety devices is not complied with the seaman assumes no risk whatsoever. Contributory negligence is not necessarily a complete defense; the damages may merely be reduced proportionately."

■ An action based upon the doctrine of unseaworthiness is maintainable at law in state and Federal courts, as well as in admiralty. *Chelentis v. Luckenbach S. S. Co.,* 247 U. S. 372, 62 L. Ed. 1171, 38 S. Ct. 501 (1918); *Engel v. Davenport,* 271 U. S. 33, 70 L. Ed. 813, 46 S. Ct. 410 (1926); *Garrett v. Moore-McCormack Co.,* 317 U. S. 239, 87 L. Ed. 239, 63 S. Ct. 246 (1942); *Seas Shipping Co. v. Sieracki,* 328 U. S. 85, 90 L. Ed. 1099, 66 S. Ct. 872 (1946).

■ While the cases and texts by no means clearly indicate the proper test to be applied under all circumstances to determine whether a court has jurisdiction of the subject matter of an action, it may be stated generally that the sufficiency of a complaint to state a cause of action is not a jurisdictional question, and that a court has jurisdiction of the subject matter of an action if the matters in litigation fall within the general class into which the court, under its inherent or statutory powers, is authorized to inquire and enter judgment on the basis of its decision. *Lally v. Anderson,* 194 Wash. 536, 78 P. (2d) 603 (1938); *De Rees v. Costaguta,* 254 U. S. 166, 65 L. Ed. 202, 41 S. Ct. 69 (1920); *North Pac. Cycle Co. v. Thomas,* 26 Ore. 381, 38 Pac. 307 (1894); *Wagner v. Lucas,* 79 Okla. 231, 193 Pac. 421 (1920); *Sidwell v. Kaster,* 289 Mo. 174, 232 S. W. 1005 (1921); *Trans-Pacific Trading Co. v. Patsy Frock & Romper Co.,* 189 Cal. 509, 209 Pac. 357 (1922); *Fooks' Executors v. Ghingher,* 172

Md. 612, 192 Atl. 782 (1937); 1 Freeman on Judgments (5th ed.) 674, 677, 761, §§ 337, 338, 365.

It is apparent from the foregoing discussion that our inquiry in this case would be answered in the affirmative if the pleadings in the Delaware action were sufficient to raise the issue of unseaworthiness under the maritime law, for, if they were sufficient so to do, then the jurisdiction of the subject matter of that action clearly was not dependent solely upon the provisions of the Jones act. Consequently, our discussion here will be confined to that question.

■ It will be helpful if we bear in mind the wide range of circumstances that are encompassed in the connotation of the word "unseaworthiness." The term covers a wide variety of situations affecting the work and risks of seamen. A condition which endangers but one member of the crew, whether the ship is on the high seas or tied up to a wharf, can make a vessel unseaworthy so far as the obligation to indemnify a seaman for injuries sustained is concerned. The basis of a finding of unseaworthiness has in many instances been the breach of "the equivalent of the common-law duty of providing a servant or employee with a safe place to work" (*The Waco,* 3 F. (2d) 476, 478 (1925)), or, as stated in *The Frank & Willie,* 45 Fed. 494, 496 (1891), a breach of the duty

" . . . to provide workmen with reasonably safe conditions for work, according to the nature of the business, and to the customary provisions for the safety of life and limb."

With reference to the existence of this duty, it is said in the latter case (p. 496):

"This is emphatically so as regards seamen, who are bound to obedience, and have not a landsman's option to throw up work. Obedience to officers is the necessary law of the ship; disobedience is criminal; and seamen have the corresponding right to protection against needless exposure. They are not required to vindicate their right to security by refusal to work at the risk of being put in irons or going to jail."

In *The Osceola, supra* (p. 175), appears an oft-quoted rule as to liability for unseaworthiness:

"That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, *or a failure to supply and keep in order the proper appliances appurtenant to the ship.*" (Italics ours.)

Many cases which refer only to unseaworthiness of the ship include in the connotation given that term, without saying so, the italicized portion of the above rule. In *Crawford v. Pope & Talbot,* 206 F. (2d) 784, 789 (1953), it is said:

"The disjunctive used above [in the rule stated in *The Osceola, supra*] must be regarded as introducing a further explanation of the nature of unseaworthiness."

In other cases, the liability is based upon "the unseaworthiness of the vessel or its appurtenant appliances and equipment." *Seas Shipping Co. v. Sieracki, supra* (p. 90).

Nor is the liability of the owner of the vessel affected by the fact that the failure to furnish seaworthy appliances or equipment was due to the negligence of officers or members of the crew. *Mahnich v. Southern S. S. Co.,* 321 U. S. 96, 88 L. Ed. 561, 64 S. Ct. 455 (1944). In that case, a seaman required to stand on a staging in order to paint the bridge was allowed to recover damages for injuries sustained by reason of a fall when a piece of defective rope supporting the staging parted. The defective rope was supplied by the mate when there was ample sound rope available. The basis of the holding was the failure to provide a safe staging, which was regarded as an appliance and hence within the rule stated in *The Osceola, supra.* Note this language:

"The stage was used in the repair of the ship, and was as intimately associated with it and with the seaman's employment *as are the gangways or other appliances or the passageways used by* the seaman in doing his work." (Italics ours.) *Mahnich v. Southern S.S. Co., supra* (p. 104).

Without extending further the discussion of what constitutes unseaworthiness, we cite a few additional illustra-

tive cases decided within the past three years. *Keen v. Overseas Tankship Corp.,* 194 F. (2d) 515 (1952); *Boudoin v. Lykes Bros. S.S. Co.,* 112 F. Supp. 177 (1953); *Pope & Talbot v. Hawn,* 346 U. S. 406, 98 L. Ed. 143, 74 S. Ct. 202 (1953).

■ Whether appellant's injury was due to the unseaworthiness of the vessel as defined by the long-established rules of maritime law, or to the negligence of officers or members of the crew under the new rules made available by the Jones act, or both, there was but a single wrongful invasion of a single primary right and there are not two separate claims or causes of action. *Baltimore S.S. Co. v. Phillips,* 274 U. S. 316, 71 L. Ed. 1069, 47 S. Ct. 600 (1927); *Pate v. Standard Dredging Corp.,* 193 F. (2d) 498 (1952).

■ When a seaman has alleged an injury in consequence of a maritime tort in an action on either the admiralty or the law side of a United States district court or in a state court, the issue of unseaworthiness may be raised notwithstanding allegations of negligence and notwithstanding failure to allege unseaworthiness. *Sandanger v. Carlisle Packing Co.,* 112 Wash. 480, 192 Pac. 1005 (1920), affirmed, *Carlisle Packing Co. v. Sandanger,* 259 U. S. 255, 66 L. Ed. 927, 42 S. Ct. 475 (1922); *Plamals v. S.S. "Pinar del Rio,"* 277 U. S. 151, 72 L. Ed. 827, 48 S. Ct. 457 (1928).

In the *Pinar del Rio* case, although there was no allegation of unseaworthiness and it was insisted that the seaman who prosecuted the action was relying upon the Jones act, the supreme court considered the issue of unseaworthiness and said: "The record does not support the suggestion that the 'Pinar Del Rio' was unseaworthy" (p. 155). In *Mahnich v. Southern S.S. Co., supra,* both the majority and the dissenters took it for granted that consideration of that issue in the *Pinar del Rio* case was proper, although the majority disapproved the reason given for holding the vessel to be seaworthy and the dissenting justices stoutly supported it.

That the issue of unseaworthiness may be raised notwithstanding the theory of recovery alleged in the pleadings seems clearly established by the *Sandanger* case, *supra,*

which antedates the Jones act. Sandanger sued in the courts of this state for personal injuries alleged to have been the result of negligence of the Carlisle Packing Company in furnishing, as part of the equipment of one of its motor boats upon which Sandanger was employed, gasoline in a one-gallon kerosene can, under circumstances which induced Sandanger innocently to use the gasoline as kerosene, resulting in a flare-up or explosion which caused him to be seriously burned. In his complaint, he pleaded the existence of a statute of the territory of Alaska which provides that persons, associations, and corporations engaged in businesses or occupations carried on by means of machinery or other mechanical appliances shall be liable to any of their employees for all damages which may result from the negligence of any of their officers, agents, or employees (thus having the same effect as the Jones act in the instant case). The material allegations of the complaint were as follows:

"That . . . by reason of the carelessness and negligence of defendant [Carlisle Packing Company] . . . and of its foreman acting as the captain in charge of and in command of said motor boat said kerosene oil can provided for such purpose was, shortly before the time when plaintiff [Sandanger] was to light the fire in said stove for the purpose of heating water for such dishwashing, at the store room of said defendant, by its store keeper and by the said . . . [foreman] aforementioned, grossly carelessly and negligently filled with gasoline oil instead of with kerosene oil, and by said . . . [foreman] carelessly and negligently, when so filled with gasoline oil, brought aboard said motor boat and carelessly and negligently placed in the galley of said boat at the place usually used for such kerosene oil can, without plaintiff or any of the other members of the crew being in any way informed of such careless and negligent substitution. . . .

"That by reason of such gross careless and negligent substitution of such gasoline oil in said kerosene oil can for kerosene, and not otherwise, when plaintiff, after having placed a few sticks of wood in said stove and after having saturated the same with . . . such gasoline oil, carelessly and negligently substituted in such can for such kerosene oil was about to light said fire . . ., a violent explosion

of the gases contained in and developed from said gasoline oil occurred, . . . and that then and there and thereby plaintiff was enveloped in flames and was severely burnt. . . . "

The complaint further alleged that plaintiff's injuries were aggravated by the defendant's failure to provide sufficient life preservers, as he made "vain efforts to obtain a life preserver before jumping into the sea" to extinguish the flames in his burning clothing.

Thus the complaint, so far as the alleged cause of the injury was the gasoline in a kerosene can, was drawn solely and exclusively on the theory of negligence of the defendant's employees, made actionable by the Alaska statute. We assumed, in disposing of the case, that the employment and service of the plaintiff was maritime in nature and was governed by the maritime law, and placed his right of recovery on the unseaworthiness of the ship. We stated (pp. 490, 492):

"It seems to us equally plain that the negligent furnishing of gasoline as kerosene under the circumstances inducing its dangerous use, as was done in this case, rendered this boat unseaworthy in the same sense that the ship was rendered unseaworthy in the *Larson* case [*Larson v. Alaska S.S. Co.*, 96 Wash. 665, 165 Pac. 880 (1917)]. . . .

"We conclude that respondent's recovery in this case may be sustained upon the theory that his injuries were received in consequence of the 'unseaworthiness' of the boat upon which he was working."

Upon certiorari to the United States supreme court, the judgment was affirmed, that court saying (pp. 258, 259):

"We have heretofore announced the general doctrine concerning rights and liabilities of the parties when one of a crew sustains injuries while on a vessel in navigable waters. . . .

"The general rules of the maritime law apply whether the proceeding be instituted in an admiralty or common-law court. [Citations.]

"Here the trial court did not instruct the jury in consonance with these rules, and by failing so to do, fell into error. . . .

"Considering the custom prevailing in those waters and other clearly established facts, in the present cause, we think the trial court might have told the jury that without regard to negligence the vessel was unseaworthy when she left the dock if the can marked 'coal oil' contained gasoline; . . . and that if thus unseaworthy and one of the crew received damage as the direct result thereof, he was entitled to recover compensatory damages."

■■■ The only conclusion that can be drawn from this decision is that when the pleadings state facts that indicate that the cause of action is maritime in nature, that is, that the injury complained of was sustained "while on a vessel in navigable waters," recovery may be had under the general rules of the maritime law, regardless of the theory of recovery relied upon by the pleadings and regardless of whether the action was maintained in an admiralty or a common-law court. The question of whether the facts alleged would substantiate recovery, either under the Jones act or under the general maritime law relative to the unseaworthiness of vessels, does not affect the jurisdiction of the court to make this determination. Therefore, in the Delaware case, the fact that the expiration of the three-year limitation applicable to cases under the Jones act may be said to have deprived the court of jurisdiction, under that act, of an action for injuries caused by the negligence of a fellow servant, did not deprive the court of jurisdiction of the subject matter of the maritime cause of action inasmuch as, under the pleadings, recovery could be based upon unseaworthiness, under the general maritime law.

■■■ Of course, in order to maintain an action based upon the doctrine of unseaworthiness on the law side of a Federal court, the jurisdictional requisite of diversity of citizenship must exist. *Erlich v. Wilhelmsen*, 44 F. Supp. 414 (1942); *Branic v. Wheeling Steel Corp.*, 152 F. (2d) 887 (1945); 4 Benedict on Admiralty (6th ed.), 1953 Supp., 40. However, as we have heretofore indicated, our inquiry on this phase of the appeal is directed only to the question of whether, by establishing that the Delaware court had no jurisdiction under the Jones act, respondent has overcome

the presumption that the court had jurisdiction of the subject matter of the action. As to whether respondent could have attacked the judgment collaterally, on the ground that diversity of citizenship did not exist or was not established, we express no opinion. *McCormick v. Sullivan,* 23 U. S. (10 Wheaton) 192, 6 L. Ed. 300 (1825).

The trial court also concluded that the Delaware judgment could not be enforced because

". . . the attempted service on the defendant [Briggs] in said action through the Secretary of State was not good and the United States District Court for the District of Delaware did not have jurisdiction of the defendant in said action."

Under Delaware law (4 Del. Code Ann. 362, 435, Title 8, §§ 278, 321), suit may be instituted against a Delaware corporation within three years after a certificate of dissolution has been filed, by service of process upon the secretary of state. *International Pulp Equipment Co. v. St. Regis Kraft Co.,* 54 F. Supp. 745 (1944)—supplemental opinion, 55 F. Supp. 860 (1944). The return of service recited that the summons was served on the defendant

". . . by delivering a true copy of the same to Harris B. McDowell, Jr., Secretary of State of the State of Delaware, by leaving same with Miss Margaret Minner, an adult person,"

and further recited that at the same time and place a copy of the complaint was delivered to Miss Minner. It is the contention of respondent, and apparently the basis of the trial court's conclusion, that, inasmuch as the return shows on its face that service was not made upon the secretary of state personally, the Delaware substituted service statute was not complied with and the Delaware court did not acquire jurisdiction of the defendant, which made no appearance.

We have earlier indicated that there are some limitations on the rule that, in an action on a judgment of a court of general jurisdiction, the court's jurisdiction over the parties to the action will be presumed unless disproved

by the record itself, or until disproved by extrinsic evidence. One such limitation is that, where the jurisdiction of the person is acquired in derogation of the common law by a special statutory mode without personal service of process, the presumption of jurisdiction "ceases." *Galpin v. Page,* 85 U. S. (18 Wall.) 350, 21 L. Ed. 959 (1874); *Settlemier v. Sullivan,* 97 U. S. 444, 24 L. Ed. 1110 (1879); *Old Wayne Mut. Life Ass'n v. McDonough,* 204 U. S. 8, 51 L. Ed. 345, 27 S. Ct. 236 (1907); *Holland v. Universal Life Co.,* 37 Del. 39, 180 Atl. 328 (1935); 3 Freeman on Judgments (5th ed.) 2831, § 1370.

The right to maintain an action against a dissolved corporation obviously is dependent upon the Delaware statute, as is the effectiveness of service upon the dissolved corporation by serving the secretary of state. The pleadings in the present case, however, show that the respondent, in its amended answer, raised no issue as to the validity of the Delaware judgment on jurisdictional grounds. The amended answer specifically admits the recovery of the judgment, and that it had been filed in the United States district court for the western district of Washington. The only issue tendered bearing on that judgment amounts to a contention that, because of concealment of pertinent facts bearing on damages in appellant's depositions, the judgment was obtained by fraud. The prayer of the amended answer, as it relates to the Delaware judgment, is that it be "*declared void as to the amount thereof,* and that plaintiff [appellant] be put on his proof as to damages sustained." (Italics ours.) A trial amendment to the amended answer alleges that the cause of action stated in the complaint in the Delaware action was brought under the Jones act, and that the cause of action accrued August 24, 1947, and the complaint was not filed until August 31, 1950, thus raising the issue which we have considered heretofore, *i.e.,* whether, the action not having been timely brought under the Jones act, the Delaware court had jurisdiction of the subject matter of the action.

The appellant had a right to assume, on the basis of the pleadings, that no issue was being raised as to the jurisdiction of the Delaware court over the dissolved Delaware corporation. Nothing occurred during the course of the trial or down to the final arguments to change the situation. After both sides had rested and at the very end of defense counsel's final argument, the question of jurisdiction of the person came into the record for the first time. We quote the record:

"Now I want to get back to—just very briefly—to raise this point, and it is for the record. On Defendant's Exhibit 25 I wish to raise the question of whether or not proper service was obtained. The statute under which service was allegedly obtained provides that service shall be made upon the Secretary of State. It is a substituted service statute, and as such must be strictly construed, and on the record the return shows that he left—that the process server left a copy with a Miss Margaret Minner, an adult person in the Secretary of State's office, but it doesn't show that he served the Secretary of State. Now he may have probably served an agent of the Secretary of State, and I just bring that up for the Court's attention in the record here.

"THE COURT: That is the service in Delaware? MR. DAVIES: Yes. Now they did not, according to that, serve the Secretary of State. They served an employe or someone in the office of the Secretary of State. That may be a technical— (interrupted). THE COURT: *Isn't that the first I heard of it?* MR. DAVIES: *The first I heard of it, too,* just a minute ago, and I am just bringing it out for what it is worth. It is a technical matter. I don't say that it goes to the real fundamental merits of this lawsuit." (Italics ours.)

A few minutes later, when announcing his reasons for dismissing appellant's case, the trial judge attached no importance to the matter of jurisdiction of the person; at least, he made no reference to it.

▮▮▮ Just as respondent timely raised the question of the jurisdiction of the Delaware court over the subject matter of the action by trial amendment, so it was obligated to raise the issue of lack of jurisdiction of the person. It frequently has been held that when a judgment is to be attacked, lack of jurisdiction must be specially pleaded by

an appropriate plea stating the facts (except where the issue is raised by a denial of the material facts on which such jurisdiction is based). *Aultman, Miller & Co. v. Mills,* 9 Wash. 68, 36 Pac. 1046 (1894); *Centennial Mill Co. v. Martinov,* 83 Utah 391, 28 P. (2d) 602 (1934); *Picking v. Local Loan Co.,* 185 Md. 253, 44 A. (2d) 462, 162 A. L. R. 678 (1945); *Gustavus v. Dahlmer,* 163 N. Y. S. 132 (1917); 3 Freeman on Judgments (5th ed.) 3004, § 1461.

The course of the trial in the present case illustrates the necessity and the reason for that rule. Appellant alleged the recovery of the Delaware judgment but alleged no jurisdictional facts, nor was it obligated to do so. Its proof in support of the allegations of the complaint consisted of a duly authenticated copy of the Delaware judgment and proof that a certified copy thereof had been filed in the United States district court for the western district of Washington.

Respondent offered in evidence its exhibit No. 25, which purported to be and was offered as an exemplified true and exact copy of everything in the file of the Delaware action, with the exception of two depositions. This was admissible, under the defenses pleaded in the trial amendment, to show the date of the filing of the complaint and the theory on which it was framed, which was material in support of the defense that it was a Jones act case and had not been commenced within the requisite three-year period.

Had the appellant been apprised by the pleadings, or even by a statement, that exhibit No. 25 was being offered as proof of lack of jurisdiction of the person of the Delaware judgment debtor, the return of service might have been amended to show proper service. Respondent apparently concedes that service upon a person designated by the secretary of state as an assistant, pursuant to a Delaware statute (12 Del. Code Ann. 140, Title 29, § 2303), would be valid. It may be that the Miss Margaret Minner referred to in the return was that assistant, and that service had in fact been made upon the secretary of state in the manner provided by the statutes of Delaware.

It is the fact of service that confers jurisdiction, not the return, and the latter may be amended to speak the truth. *John Hancock Mut. Life Ins. Co. v. Gooley*, 196 Wash. 357, 83 P. (2d) 221 (1938); *Ranch v. Werley*, 152 Fed. 509 (1907).

A most interesting demonstration of the right to secure amendment of a return of service to show jurisdictional facts is found in two of our opinions dealing with the same judgment. See *Cunningham v. Spokane Hydraulic Mining Co.*, 18 Wash. 524, 52 Pac. 235 (February, 1898)—before amendment; 20 Wash. 450, 55 Pac. 756 (December, 1898) —after amendment.

The issue of the jurisdiction of the Delaware court over Briggs not having been timely raised, and appellant having had no opportunity to correct the defective return, the trial court erred in passing upon that issue and it cannot be relied upon as a ground to sustain the dismissal of appellant's action.

Respondent further contends that, even if the Delaware judgment is held to be good, the action must fail. In support of this contention, respondent advances the general proposition that the policy of insurance issued to Briggs was an indemnity insurance policy, and that by its terms respondent is not required to make payment except to Briggs and then only in the event and to the extent that Briggs has paid a claim.

It is conceded that by its terms the policy is one of indemnity only, and that appellant's right of action thereunder is based solely upon the application of certain provisions of the California insurance code. In order to discuss properly the contention of respondent that the California statute should not be given effect, it is necessary to set out briefly the facts concerning the issuance of the policy, as found by the trial court.

In January, 1947, Phillip G. Briggs, president of the Briggs Steamship Corporation, requested Talbott Carroll Company, Inc., a Washington corporation, to obtain protection and indemnity insurance covering the M.V. "South-

eastern," which was then under conversion in a shipyard near San Francisco, California, the insurance to be effective from the time the vessel left San Francisco. It was contemplated that the vessel might carry cargo from San Francisco on its voyage north. Talbott Carroll Company made arrangements with Griswold, Whitney & Baird, of San Francisco, attorneys-in-fact for respondent insurance company, for the placing of insurance on the vessel, and the insurance became effective April 23, 1947, prior to the sailing of the vessel from San Francisco. Griswold, Whitney & Baird mailed the original copy of the policy of insurance to Talbott Carroll Company in Seattle, which in turn mailed it to Mr. Briggs.

Based upon the foregoing circumstances, the trial court made a specific finding that the policy of insurance was executed, issued, and delivered in the state of California. The court further found that, at the time of the issuance of the policy, a section of the California insurance code provided that a policy insuring against loss or damage resulting from liability for injury suffered by another person, whether or not actually containing such provision, should be construed as if the following provision was embodied therein:

" ' . . . that whenever judgment is secured against the insured . . . in an action brought by the injured person . . . , then an action may be brought against the insurer on the policy and subject to its terms and limitations by such judgment creditor to recover on the judgment.' Sec. 11580 (Deering's California Codes, Insurance.)"

The trial court concluded that the policy was a marine insurance policy and was a maritime contract; that the above quoted section of the California insurance code was applicable thereto and formed a part of said policy; that the law of Washington requires the interpretation of the policy as modified by the substantive changes incorporated therein by the California statute; and that the Washington courts would construe and enforce the policy in conformity with the law of California. With this conclusion we agree.

We have considered and find no merit in respondent's contention that the inclusion of such a provision in an

insurance policy is contrary to the public policy of this state. *Refusal* by a legislature to adopt certain legislation might be construed to be a declaration of public policy, but respondent does not suggest when, if ever, such legislation has been acted upon adversely by our legislature. Nor is any good reason suggested for holding that *failure* to adopt such legislation is an expression of public policy. The reasoning of the cases is that wise public policy dictates the adoption of legislation comparable to that of California, making such a provision a part of every policy insuring against loss or damage resulting from liability for injury suffered by another person. See *Merchants Mut. Auto. Liability Co. v. Smart*, 267 U. S. 126, 69 L. Ed. 538, 45 S. Ct. 320 (1925); *Hansen v. Continental Ins. Co.*, 262 N. Y. 136, 186 N. E. 420 (1933); *Roth v. National Auto. Mut. Cas. Co.*, 195 N. Y. S. 865 (1922).

Respondent concedes that the trial court correctly held that the California statute is substantive and made a substantive change in the insurance contract, but contends that, inasmuch as the insurance contract in question was performed in the state of Washington, it should be construed according to the law of Washington rather than that of California. While we are not satisfied that the mere fact that the insured maintained offices in Washington and contemplated that the ship would operate in Alaskan waters, primarily between Prince Rupert, British Columbia, and southeastern Alaska, renders this state the place of performance, we think that the finding of the trial court that the contract was executed, issued, and delivered in California is determinative of the question. In the absence of an agreement to the contrary, the law of the place where the contract is entered into controls the determination of the rights and liabilities of the parties thereunder. *Norm Advertising v. Monroe Street Lbr. Co.*, 25 Wn. (2d) 391. 171 P. (2d) 177 (1946).

Respondent further contends that the California statute was unconstitutional, inasmuch as the insurance policy in question was a maritime contract and provisions

of the Federal constitution (Art. III, § 2) require that such contracts be interpreted according to the general admiralty law.

We think that this contention is answered by the recent decision of the United States supreme court in *Maryland Cas. Co. v. Cushing,* 347 U. S. 409, 74 S. Ct. 608 (1954). That case involved an action by the personal representatives of five seamen who had been drowned when a tugboat collided with a pier and capsized in the Atchafalaya river in Louisiana. The action was maintained against the liability underwriters of the owner of the vessel, on the basis of a Louisiana statute which authorized direct suit " 'against the insurer within the terms and limits of the policy.' " Both policies sued on by their terms precluded payment to anyone until the insured "shall have been held liable to pay damages." Four members of the supreme court were of the opinion that the Louisiana statute conflicted with Federal legislation limiting liability of the shipowner to the value of his interest in the vessel and was therefore an invalid attempt to enter a field of maritime jurisdiction which had been withdrawn from the states. The remaining justices disagreed for various reasons, and the dilemma resulting from these differences was resolved by remanding the case to the lower court to be continued until after completion of the limitation proceeding instituted under the Federal statute. Nowhere in the majority disposition of the case was there discussion as to whether the Federal constitution rendered the Louisiana statute invalid. However, the four dissenting justices squarely met the constitutional question raised by the respondent in the present case. We quote from the dissenting opinion, written by Mr. Justice Black:

"Because of the confused state in which this case goes back to the District Court I think it desirable that all questions be discussed. I shall first take up the constitutional objections. . . .

"(b) Article III, § 2 of the Constitution provides that 'The judicial Power shall extend . . . to all Cases of admiralty and maritime Jurisdiction. . . .' It is con-

tended that this provision not only gives the Federal Government supreme power over maritime affairs but that it also denies any power in states to legislate in this field. This complete denial of state power is said to have been established by *Southern Pacific Co. v. Jensen*, 244 U. S. 205 [61 L. Ed. 1086, 37 S. Ct. 524 (1917)], and *Knickerbocker Ice Co. v. Stewart*, 253 U. S. 149 [64 L. Ed. 834, 40 S. Ct. 438 (1920)]. The opinions in those cases did lend some support to a constitutional doctrine that the Admiralty Clause required rigid national uniformity in maritime legislation. But this Court rejected that doctrine in *Red Cross Line v. Atlantic Fruit Co.*, 264 U. S. 109 [68 L. Ed. 582, 44 S. Ct. 274 (1924)]. Mr. Justice Brandeis speaking for the Court in that case made it absolutely clear that the Admiralty Clause does not deprive states of power to make different regulations in regard to maritime affairs unless a state attempts to modify or displace essential features of the substantive maritime law or to modify the remedial law of admiralty courts. . . .

"The uniformity which the Admiralty Clause of the Constitution requires is limited to one indefinitely defined area —that involving 'the essential features of an exclusive federal jurisdiction.' *Just v. Chambers*, 312 U. S. 383, 391 [85 L. Ed. 903, 61 S. Ct. 687 (1941)]. Except in instances falling clearly within this area states are free to make laws relating to maritime affairs. . . . No reason has been advanced why marine insurance, long the province of the states, so imperatively requires uniformity that we should now hold that Congress alone can regulate it. Consequently, to enforce the Louisiana law would not impair the uniformity of maritime law, but would once again 'illustrate the alacrity with which admiralty courts adopt statutes granting the right to relief where otherwise it could not be administered by a maritime court. . . .' *Workman v. New York City*, 179 U. S. 552, 563 [45 L. Ed. 314, 21 S. Ct. 212 (1900)]. See also *The Hamilton*, 207 U. S. 398 [52 L. Ed. 264, 28 S. Ct. 133 (1907)]. . . .

"There can be no constitutional barrier to this Louisiana law passed to protect persons injured within its borders. Consequently, unless Congress has specifically forbidden states to protect seamen this way, Louisiana's statute is valid and should be enforced." *Maryland Cas. Co. v. Cushing, supra* (p. 428 *et seq.*).

While the case of *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 201 F. (2d) 833 (1953), relied on by respondent,

would seem to indicate that a state statute regulating marine insurance is "hostile to the characteristic features of the maritime law," we are of the opinion that the language quoted from the *Maryland Cas. Co.* case is controlling; in any event, it is persuasive so far as this court is concerned. There can be no distinction in principle between the Louisiana statute and the California statute; both, *when found to be applicable,* have the effect of making substantive changes in insurance contracts by permitting injured persons to maintain actions against insurers, contrary to the terms of the policies. See, also, *Hansen v. Continental Ins. Co., supra.*

We have announced our holdings on the principal issues raised on this appeal. We have also considered the remaining contentions advanced by respondent in support of the judgment, and we find nothing therein that alters our conclusion that, on the record before us, the Delaware judgment is entitled to full faith and credit and that, under the California law applicable to the contract of insurance, appellant was entitled to maintain an action thereon.

The judgment of dismissal is reversed, and the case remanded with instructions to the trial court to enter a judgment not inconsistent with this opinion.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and WEAVER, JJ., concur.

---

December 30, 1954. Petition for rehearing denied.