**FILED**
**JULY 12, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| THEODORE DENISON, MARTHA DENISON, AND G.S.,† | ) ) ) | No. 38208-7-III |
| Appellants, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| SPENCER GORMAN, | ) ) | |
| Respondent. | ) ) | |

SIDDOWAY, C.J. — Theodore Denison, Martha Denison, and Martha's

granddaughter G.S. (collectively "the Denisons") appeal an order vacating their default

judgments against Spencer Gorman for damages resulting from an automobile accident.

A little over a year after obtaining the judgments, the Denisons' lawyer notified Mr.

Gorman's insurer that the judgments existed. The lawyer retained to represent Mr.

Gorman moved to vacate the judgments for failure to effect service of process and other

claimed irregularities. The trial court granted the motion, identifying multiple grounds.

---

† To protect the privacy interests of minor children, this court identifies them by initials or pseudonyms. General Orders of Division III, *In re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses*, (Wash. Ct. App. June 18, 2012), https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp &ordnumber=2012_001&div=III.

CR 60(b)(5) and equitable principles were proper bases on which to vacate the default judgments. We need not reach Mr. Gorman's alternative arguments. We affirm.

FACTS AND PROCEDURAL BACKGROUND

In late November 2018, Spencer Gorman, who turned 17 earlier that month, was contacted by his maternal grandfather, Scott Duncan, who needed a ride. Young Mr. Gorman used his grandfather's car and was driving through downtown Spokane when he glanced backward, intending to change lanes, and realized too late that a light had changed and the car ahead of him had come to a stop. He rear-ended a car being driven by Theodore Denison in which Martha Denison and Martha's 7-year-old granddaughter G.S. were passengers.

Police were not summoned. Insurance and personal information was exchanged and Mr. Gorman took photographs of the damage to the cars. Mr. Gorman spoke on the phone with his mother, Jennifer Duncan, who also spoke with Mr. Denison. Ms. Duncan notified her father, Mr. Duncan, of the mishap and Mr. Duncan reported it to his insurer, State Farm, the next day.

Within two days of the accident, State Farm contacted the Denisons. State Farm was thereafter notified by a lawyer that he would be representing the Denisons in connection with their personal injury claims. State Farm dealt directly with Mr. Denison to resolve the property damage claim.

2

In June 2019, the Denisons' lawyer sent separate settlement demands to State Farm on behalf of Mr. and Ms. Denison. He sought $37,000 and $25,000, respectively. State Farm notified Mr. Duncan and Mr. Gorman of the demands in a letter. State Farm's letter said the insurer would continue trying to resolve the claims, and, "[i]n the event this case is not settled and litigation should ensue, we will select and compensate attorneys to defend you." Clerk's Papers (CP) at 343. The letter asked that State Farm be notified immediately if Mr. Duncan or Mr. Gorman was served with lawsuit papers, "as there is a limited time allowed for a response." *Id.*

The Denisons' medical expenses presented to State Farm supported only a small part of their demands, and on July 17, 2019, State Farm conveyed offers to pay Mr. and Ms. Denison $5,850 and $5,500, respectively. According to State Farm, the Denisons' lawyer never responded to the offers. His last correspondence to State Farm was a letter dated July 24, 2019, stating that his firm was now representing G.S.

*Legal proceedings*

In five declarations filed in the action below, the Denisons' lawyer testified that service of a summons and complaint on Spencer Gorman was accomplished on August 18, 2019. The summons and complaint were filed with the clerk of court on October 23, 2019. Both are dated September 13, 2019.

On November 19, no notice of appearance or answer having been filed, the Denisons moved ex parte for entry of an order of default and default judgments. In

moving for the default judgments, their lawyer represented to the court that Mr. Gorman was not an infant. Counsel had a basis for saying that, as he had obtained a copy of Mr. Gorman's driver's license at some point and was aware Mr. Gorman had turned 18 two weeks earlier.

The motion for default stated that Mr. Gorman was served with the summons and complaint on August 18, 2019. Yet the process server's declaration filed in support of the motion stated that service was effected on October 5, 2019. It stated that the process server had effected substitute service at Mr. Gorman's usual place of abode on a woman who answered the door and said she was Mr. Gorman's mother. But it identified the woman as "Ms. Gorman," and Mr. Gorman's mother is Jennifer Duncan. CP at 12.

At an ex parte hearing on December 13, 2019, the trial court entered the proposed order of default. The order stated Mr. Gorman had been served on August 18, 2019. The Denisons' lawyer presented proposed judgment summaries awarding Mr. Denison, Ms. Denison, and G.S. principal judgment amounts of $35,000, $25,000, and $10,000, respectively, amounts that were well in excess of their special damages. The trial court declined to enter judgment in the amounts requested without further declarations justifying the general damage amounts. Based on declarations filed by the Denisons' counsel thereafter, the trial court entered judgments in the requested amounts on January 3, 2020.

4

*Collection undertaken*

A little over a year later, on January 8, 2021, the Denisons' lawyer wrote State Farm, informing the insurer that he had obtained default judgments on January 3, 2020, and "[t]he one year timeframe for which to ask the judge to vacate the default ha[d] passed." CP at 306. He informed State Farm that over $8,000 in interest had accrued at the 12 percent interest rate provided in the judgments, but the Denisons would forego the interest if they received payment within 30 days.

Instead, on March 5, 2021, Mr. Gorman, represented by counsel, moved to set aside the order of default and default judgments under CR 55 and CR 60(b). Although he did not dispute liability, he identified defenses to causation and damages.[1] In an overlength brief, he identified what he contended were the following irregularities or other bases for setting aside the judgments:

- Failure to appoint a guardian or guardian ad litem for minor plaintiff G.S. and minor defendant Gorman,
- Failure to comply with the Servicemembers Civil Relief Act, 50 U.S.C. § 3912,
- Failure to make findings of fact and conclusions of law supporting the default judgments,
- Failure to present expert testimony establishing injury causation and whether medical expenses were reasonable and necessary,

_____

[1] State Farm's review of the medical bills submitted on behalf of Mr. and Ms. Denison in the summer of 2019 caused it to question whether all of the medical care was traceable to the automobile accident. After adjustments, it had offered to pay Mr. Denison $5,850.00, $4,984.97 of which was special damages; and to pay Ms. Denison $5,500.00, $4,515.97 of which was special damages. It had never received a settlement demand package for G.S.

5

- A judgment interest rate of 12 percent, exceeding the statutory maximum for tort-based judgments,

- Judgments improperly implying that Mr. Duncan's auto insurance policy was subject to the Washington "Financial Responsibility Act," chapter 46.29 RCW, and

- Improper service of process, and in this connection,
  - Use of an unregistered professional process server,
  - Failure by the process server to endorse the summons or attach an affidavit to the summons as required by CR 4(g)(2), and
  - Failure to effect service of process on Mr. Gorman.

Mr. Gorman argued that he had presented a prima facie defense to causation and damages, he had acted with due diligence upon learning of the default judgments, and the Denisons would not suffer substantial hardship if the judgments were set aside.

Mr. Gorman's motion was supported by the declaration of a State Farm employee who recounted the history of State Farm's dealings with the Denisons and their lawyer. It was supported by a declaration from Ms. Duncan, testifying that she has a bachelor of arts degree in criminal justice and sociology, had been served with process in the past, and was fully aware that when served you must respond to it. She testified she was "never served with the Summons and Complaint in this action or received any notice or paperwork indicating any type of claim against [her] son." CP at 353. It was supported by a declaration of Mr. Gorman, who testified, "I was never served with the Summons and Complaint in this matter" and "had no knowledge that a lawsuit against me was filed or that a default judgment was entered against me." CP at 295. He testified that if he had

6

received notice, he "would have discussed it with [his] parents about how to respond to it." CP at 296.

The Denisons' response not only contested Mr. Gorman's briefing on the merits, but also included a motion to strike his overlength brief. The Denisons also filed a second declaration from their process server, who testified he had not realized his registration as a process server had lapsed. This second declaration repeated that the process server had personally served a woman "at approximately 12:50 p.m. on October 5, 2019," and the woman had identified herself as "Jennie and told [him] that she was Spencer's mother." CP at 442-43. He testified that he had reviewed photos on "Jennie" Duncan's Facebook page (which was Mr. Gorman's mother's Facebook page) and was "confident that she is the person I served." *Id.* at 443. He also testified that he writes down "in a pad of paper the name, date, time and address of everyone I serve," CP at 443, and attached a copy of the following information from his notepad:

CP at 445. The Denisons' lawyer filed his own further declaration in which he once again stated, as he had consistently, that he "had Defendant properly served on August 18, 2019." CP at 438.

In reply, Mr. Gorman argued that the Denisons' response only raised additional questions about effective service. He directed the court's attention to the process server's statement in the second declaration, "When I served her with the Summons and Complaint, Ms. Duncan *took an envelope from me that I told her was for her son*," arguing that effective service requires handing the recipient the summons and complaint, not an envelope. CP at 443 (emphasis added). He pointed out the continuing discrepancy in the date of service.

The motion to set aside the default was heard by the same judge who had granted the motion for default and had entered the default judgments. Addressing the Denisons' motion to strike, the court said its practice on receiving an overlength brief was to stop reading after the 15 permitted pages, which is what it had done in this case. The court did not limit oral argument, however, and in orally arguing the motion, Mr. Gorman's lawyer argued his multiple grounds. He stated that the defense's "first and primary claim is that Spencer Gorman was not properly served in this matter. So that falls into CR 60 (b) (5), that the judgment is void." Report of Proceedings (RP) at 7, *and see* RP at 21. The Denisons' counsel responded to the multiple grounds.

8

After hearing argument, the trial court ruled orally, touching on most but not all of Mr. Gorman's arguments, and concluded, "for all of those reasons, I am going to vacate the default order as well as the default judgment." RP at 27. The court then spoke with the lawyers about the process going forward. Before the hearing was adjourned, the Denisons' lawyer asked "if we could specifically note under which of the elements that the default is being vacated for," and the court answered, "I'm going to let [Mr. Gorman's lawyer] put that order together." RP at 29. It told the Denisons' lawyer that he could propose his own order if he wished.

The order later presented by Mr. Gorman was entered by the court after it added some handwritten language. Relevant to the appeal, the order states (with the court's handwritten addition indicated by a disimilar font):

> Based on the argument of counsel, the pleadings and evidence presented, the Court finds that good cause exists to set aside the Order of Default dated December 13, 2019 and the Default Judgments dated January 3, 2020 are set aside and vacated for the following reasons
>
> 1. Defendant Spencer Gorman's failure to appear and answer was due to improper and inadequate service on defendant and lack of actual notice to defendant & Irregularity in proof of service documents, failure to meet reqs. of § 3931(b)(1), lack of guardian. MCM
>
> 2. Defendant Spencer Gorman has a meritorious defense to plaintiffs' claims.
>
> 3. Defendant Spencer Gorman acted with due diligence after notice of entry of the Default Judgments against him.
>
> 5. Plaintiffs will not suffer substantial hardship if the Default Judgments are set aside and Defendant is permitted to enter a defense in this action.

9

No. 38208-7-III
*Denison v. Gorman*

CP at 482.

The Denisons appeal.

## ANALYSIS

I.     BASIS FOR RELIEF FROM DEFAULT JUDGMENTS AND STANDARD OF REVIEW

The grounds and procedures for obtaining relief from a judgment are set forth in

CR 60.  *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 582, 599 P.2d 1289 (1979).  But

where a judgment is a *default* judgment, relief is governed by equitable principles, which

our Supreme Court summarized in *Griggs.  See id.*

"Default judgments are not favored in the law."  *Id.* at 581 (citing *Ramada Inns,*

*Inc. v. Lane & Bird Advert., Inc.*, 102 Ariz. 127, 129, 426 P.2d 395 (1967).  "'[I]t is the

policy of the law that controversies be determined on the merits rather than by default.'"

*Id.* (alteration in original) (quoting *Dlouhy v. Dlouhy*, 55 Wn.2d 718, 721, 349 P.2d 1073

(1960)).  "Balanced against that principle is the necessity of having a responsive and

responsible system which mandates compliance with judicial summons, that is, a

structured, orderly system not dependent upon the whims of those who participate

therein, whether by choice or by the coercion of a summons and complaint."  *Id.*  A

proceeding to vacate a default judgment is "equitable in character and relief is to be

afforded in accordance with equitable principles."  *Id.* at 581 (citing *White v. Holm*,

73 Wn.2d 348, 351, 438 P.2d 581 (1968)).  "The trial court should exercise its authority

'liberally, as well as equitably, to the end that substantial rights be preserved and justice

10

between the parties be fairly and judiciously done.'" *Id.* at 582 (quoting *White*, 73 Wn.2d at 351).

"A party moving to vacate a default judgment must be prepared to show (1) that there is substantial evidence supporting a prima facie defense; (2) that the failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect; (3) that the defendant acted with due diligence after notice of the default judgment; and (4) that the plaintiff will not suffer a substantial hardship if the default judgment is vacated." *Little v. King*, 160 Wn.2d 696, 703-04, 161 P.3d 345 (2007) (citing *White*, 73 Wn.2d at 352). This is not a mechanical test; whether or not a default judgment should be set aside is a matter of equity. *Id.* When the party seeking relief shows a strong defense to the underlying claim, "scant time will be spent inquiring into the reasons which occasioned entry of the default." *White*, 73 Wn.2d at 352.

The motion to vacate is addressed to the sound discretion of the trial court and on appellate review, we will not disturb the trial court's disposition unless it clearly appears that that discretion has been abused. *Griggs*, 92 Wn.2d at 582. Abuse of discretion is less likely to be found if the default judgment is set aside. *Id.* (citing *White*, 73 Wn.2d at 351-52; *Agric. & Livestock Credit Corp. v. McKenzie*, 157 Wash. 597, 289 P. 527 (1930)).

The Denisons argue in error that the four factors identified in *White* as those considered in deciding whether to vacate a default judgment apply only to motions

brought under CR 60(b)(1). Relief under CR 60(b)(1) is only available to defendants who move for relief within one year of entry of the judgment, and Mr. Gorman concededly missed that one-year time limit.

The basis for relief in *White* was that provided by former RCW 4.32.240 (1891),[2] which was substantially similar to the basis for relief provided by CR 60(b)(1). *See* 73 Wn.2d at 350 & n.1. But contrary to the position taken by the Denisons, when a *default* judgment is at issue, equitable principles in general and the *White* factors in particular are considerations for the court in deciding a motion to vacate a judgment under other subsections of CR 60(b), not just CR 60(b)(1).

In *Morin v. Buris*, a case presenting arguable fraud—a basis for vacating a judgment under CR 60(b)(4)—our Supreme Court observed that it had "long favored resolution of cases on their merits over default judgments" and "will liberally set aside default judgments pursuant to CR 55(c) and CR 60 and for equitable reasons in the interests of fairness and justice." 160 Wn.2d 745, 749, 161 P.3d 956 (2007). One of the cases in that consolidated appeal supported an inference of active concealment and the court "remand[ed] to the trial court for further consideration of whether [defendant] has met the standards of *White* and/or CR 60(b)(1), (4)." *Id.* at 758. If so, "then the [defendants]' failure to appear was excusable under equity and CR 60." *Id.* (citing, inter

---

[2] RCW 4.32.240 was repealed by LAWS OF 1984, ch. 76, § 11(16).

alia, CR 60(b)(4)). *Peoples State Bank v. Hickey*, 55 Wn. App. 367, 370-71, 777 P.2d

1056 (1989), also recognized that equitable principles, including the guidance in *White*,

apply where a motion to vacate is brought under CR 60(b)(4). *See also Suburban*

*Janitorial Servs. v. Clarke Am.*, 72 Wn. App. 302, 307-08, 863 P.2d 1377 (1993) (citing

equitable principles in affirming order vacating default judgment under CR 60(b)(4) and

60(b)(11)).

Equitable considerations and the *White* factors have been considered when it is

contended that a judgment is void under CR 60(b)(5). The decision in *Lee v. Western*

*Processing Co.* affirmed the vacating of a judgment because the record supported the trial

court's finding that the defendant was not properly served with the summons and

complaint, yet this court still discussed the relevant equitable principles. 35 Wn. App.

466, 468, 667 P.2d 638 (1983) (stating that "[t]he law favors determination of

controversies on their merits," "default judgments are disfavored," "[a] proceeding to

vacate a default judgment is equitable in character," and "[t]he court should exercise its

authority to the end that substantial rights be preserved and justice done between the

parties"). *See also Morris v. Palouse River & Coulee City R.R. Inc.*, 149 Wn. App. 366,

370, 203 P.3d 1069 (2009) (applying equitable principles in reviewing order vacating

default judgment under CR 60(b)(5)).

Equitable principles and the *White* factors were analyzed by this court in

determining to set aside a judgment under CR 60(b)(11), the "catchall" provision of the

13

rule. *Topliff v. Chicago Ins. Co.*, 130 Wn. App. 301, 122 P.3d 922 (2005)). The Topliffs had properly served a foreign insurer by serving process on the state insurance commissioner, but the commissioner neglected to notify the foreign insurer by forwarding the process. *Id.* at 305. This court held that the commissioner's failure to forward process provided a basis for relief under CR 60(b)(11), since it was an extraordinary circumstance not covered by any other section of CR 60(b). *Id.* Yet this court held that equitable principles, including the four *White* factors, also applied in determining whether to grant relief. *Id.* at 304-05, 308.

If CR 60(b)(1) is often the basis for motions to set aside default judgments, it is probably the broad circumstances under which it applies—"[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order"—the sort of circumstances that can result in a failure to answer. But the trial court's decision whether to grant relief to Mr. Gorman under CR 60(b)(4), (5), or (11) was governed by the same equitable principles.

II.     WE CAN AFFIRM THE TRIAL COURT'S ORDER AS A PROPER EXERCISE OF DISCRETION UNDER CR 60(b)(5) AND NEED NOT ADDRESS MR. GORMAN'S ALTERNATIVE ARGUMENTS

The trial court's order setting aside the order of default and default judgments found that Mr. Gorman has a meritorious defense to the Denisons' claims, that he acted with due diligence after notice of entry of the default judgments, and that the Denisons

14

will not suffer substantial hardship if the default judgments are set aside.  Those findings

are not challenged on appeal.

The focus of the Denisons' appeal is the trial court's CR 60(b) bases for providing

relief.  No subsection of the rule is identified by the trial court's order.  We can infer from

the order's language that one basis for relief was CR 60(b)(5).  *See* CP at 482

("Defendant Spencer Gorman's failure to appear and answer was due to improper and

inadequate service on defendant and lack of actual notice to defendant & Irregularity in

proof of service documents.").  We can infer that other bases were CR 60(b)(4) and (11),

which Mr. Gorman argued applied based on the Denisons' alleged failure to comply with

state and federal law protecting defendants under the age of 18 and servicemembers.

*See* CP at 482 ("Defendant Spencer Gorman's failure to appear and answer was due to

. . . failure to meet reqs. of § 3931(b)(1), lack of guardian.").

We can affirm on the basis that vacating the default judgments was authorized by

CR 60(b)(5) and equitable principles.  We need not reach the CR 60(b)(4) and (11)

alternatives and the subissues they present.

The Denisons contend we cannot affirm by relying on Mr. Gorman's "first and

primary" basis for relief, CR 60(b)(5),[3] because, they argue, the trial court "did not find

Plaintiffs failed to serve Defendant" and "never ruled that Defendant's mother was not

---

[3] *See* RP at 7.

served with process at Defendant's usual place of abode." Br. of Appellant at 1;

Appellant's Reply Br. at 1. But the order's language that relief is granted due to

"improper and inadequate service on defendant and lack of actual notice to defendant"

can reasonably be read as relying on only CR 60(b)(5). CP at 482. To say that the

Denisons improperly served, inadequately served, and failed to give actual notice to Mr.

Gorman *is* to say that they failed to serve him, and did not serve process on Ms. Duncan

at Mr. Gorman's usual place of abode.[4]

Under CR 60(b)(5), a court may relieve a party from a final judgment if the

judgment is void. *See Sutey v. T26 Corp.*, 13 Wn. App. 2d 737, 748, 466 P.3d 1096,

*review denied*, 196 Wn.2d 1026, 476 P.3d 568 (2020). A default judgment against a

party is void if the court did not have personal jurisdiction over that party. *Delex Inc. v.*

*Sukhoi Civ. Aircraft Co.*, 193 Wn. App. 464, 468, 372 P.3d 797 (2016) (citing *Ahten v.*

---

[4] The Denisons support their contention that the trial court's order did not rely in part on CR 60(b)(5) by pointing to statements made by the trial court during the hearing on the motion to vacate the default order and judgments.

A trial judge's oral conclusions are "no more than a verbal expression" of her informal opinion at the time. *Ferree v. Doric Co.*, 62 Wn.2d 561, 566-67, 383 P.2d 900 (1963). A trial court's oral decision may be "altered, modified, or completely abandoned," and is not binding unless it is later formally incorporated into the findings, conclusions, and judgment. *Id.* at 567. The trial court clearly stated during the hearing that it was going to await Mr. Gorman's presentment of a proposed order to specify the basis for its ruling.

"[I]f the court's oral decision is *consistent* with the findings and judgment, it may be used to interpret them." *Id.* (emphasis added). But the Denisons are pointing to statements during the hearing as *inconsistent* with the plain meaning of the court's order. Assuming without agreeing that the statements are inconsistent, we will not consider them.

*Barnes*, 158 Wn. App. 343, 349, 242 P.3d 35 (2010)).  A court does not have personal jurisdiction over a party if service of the summons and complaint was improper.  *Id.* (citing *Ahten*, 158 Wn. App. at 349).

Under Washington law, the plaintiff bears the initial burden of proving a prima facie case of sufficient service.  *Scanlan v. Townsend*, 181 Wn.2d 838, 847, 336 P.3d 1155 (2014).  An affidavit of service that is regular in form and substance is presumptively correct.  *Leen v. Demopolis*, 62 Wn. App. 473, 478, 815 P.2d 269 (1991) (citing *Lee*, 35 Wn. App. at 469).  The return, however, is subject to attack and may be discredited by competent evidence.  *Lee*, 35 Wn. App. at 469 (citing *Dubois v. W. States Inv. Corp.*, 180 Wash. 259, 39 P.2d 372 (1934)).  When the plaintiff meets it burden of proving a prima facie case of sufficient service (by the presumption or otherwise), the burden is on the person attacking the service to show by clear and convincing proof that the service was improper.  *See id.* (citing *Allen v. Starr*, 104 Wash. 246, 247, 176 P. 2 (1918); *McHugh v. Conner*, 68 Wash. 229, 231, 122 P. 1018 (1912)).

Among defects in the return of service that will prevent the presumption of service from arising are discrepancies in dates on documents that create doubt about proper service, and where the affidavit of service is not endorsed upon or attached to the summons, as required by CR 4(g)(2).  *Id.* at 469-70.

When the affidavit of service contains defects or irregularities, they are permitted to be corrected by an amendment of the return, since it is the fact of service that confers

jurisdiction, not the return. *In re Est. of Palucci*, 61 Wn. App. 412, 416, 810 P.2d 970

(1991) (citing *Williams v. Steamship Mut. Underwriting Ass'n*, 45 Wn.2d 209, 227, 273

P.2d 803 (1954)).

Applying this case law to the facts at hand, the Denisons bore the initial burden of

proving a prima facie case of sufficient service. They failed to do so. Just as in *Lee*,

there was a failure to endorse the affidavit of service upon or attach it to the summons, as

required by CR 4(g)(2). As in *Lee*, the discrepancies in the Denisons' lawyer's and

process server's declarations and the order of default as to when service was effected

(August 18, 2019, October 5, 2019, and August 18, 2019, respectively) creates doubt

about proper service. The return of service stated the woman served was Ms. Gorman,

whereas Mr. Gorman's mother is Jennifer Duncan. Finally, the Denisons' process server,

who was engaged in serving process for a fee, was not registered as required and did not

affix his registration number or county of residence on the proof of service, in violation

of RCW 18.180.010 and .030.

Mr. Gorman responded to the Denisons' failure to present a prima facie showing

of sufficient service with his own declaration that he had never been served, and if he had

been served or otherwise received notice of the lawsuit, he would have discussed with his

parents how to respond. He filed his mother's declaration that she was never served on

October 5, 2019, as asserted by the Denisons' process server. She testified in her

declaration to the educational experience and prior receipt of process that made her fully aware of the need to respond.

Finally, Mr. Gorman responded with the declaration of a State Farm claim specialist, which established that Duncan/Gorman family members promptly notified the insurer of the accident and the insurer had acknowledged coverage and promptly addressed the loss claim. The claim specialist attached and authenticated a copy of the letter State Farm directed to Mr. Gorman and his grandfather on June 20, 2019, notifying them that if the claim was not settled and litigation ensued, "we will select and compensate attorneys to defend you," and which advised Mr. Gorman and his grandfather to notify State Farm immediately if they were served with lawsuit papers. CP at 343.

In an effort to correct the defects and irregularities in their proof of service, the Denisons submitted a second declaration of their process server. As Mr. Gorman emphasizes, in the second declaration the process server states that service was effected when Ms. Duncan "took an envelope from me that I told her was for her son," without swearing under oath that the envelope contained the summons and complaint in this case. CP at 443. The second declaration again did not identify a Washington registration number or county of residence for the process server. And most strange was that the discrepancy between the October 5, 2019 and August 18, 2019 dates of service was not only *not clarified*; it was repeated. *See* CP at 422 (Plaintiffs' Resp.), 438 (Decl. of counsel).

19

This case can be analyzed as one in which the Denisons never met their initial burden of presenting prima facie proof of sufficient service. Their original affidavit of service was not regular in form and substance, and its irregularities and defects were never fully cured. As a result, the burden of responding never shifted to Mr. Gorman.

Even if the burden was viewed as shifting, the trial court could reasonably find Mr. Gorman's evidence to be clear and convincing. If Ms. Duncan was not served, then the earliest she would have learned that she was allegedly served on October 5, 2019, was on or after January 8, 2021, when the Denisons' lawyer informed State Farm of the judgments. That was 15 months after the early Saturday afternoon in October 2019 when she was allegedly served. It would be unreasonable to expect her to be able to recreate where she was at 12:50 p.m. that day, or who might have been at the residence at that time and able to speak to whether a process server came by. That cannot be the evidence required.

Under the circumstances, evidence that can reasonably be viewed as clear and convincing includes the evidence that Ms. Duncan—the person allegedly served—has a background that supports her testimony that she knew service of process must be responded to. It includes evidence that the Duncan/Gorman family had promptly reported the accident to the insurer and had received assurances that the claim was covered and the insurer would retain counsel and provide a defense. This is similar to the evidence in *Lee*, of a defendant whose prior actions "demonstrated concern about [the

plaintiff]'s claim," from which "[i]t could be inferred that any receipt of service of the summons and complaint would have produced a similar reaction." *Lee*, 35 Wn. App. at 469. The Denisons offer no reason why the family would *not* have notified the insurer.

For these reasons, and because the Denisons do not dispute that Mr. Gorman demonstrated the first, third, and fourth *White* factors, we find no abuse of discretion by the trial court in vacating the order of default and default judgments.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Pennell, J.

21